UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAGEWATER, LLC,

Plaintiff,

v.

DAVID HOSSFELD,

Defendant.

_____/

Case No.:

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Sagewater, LLC ("**SageWater,**" "**Company,**" "**Employer**" or "**Plaintiff**") sues Defendant David Hossfeld ("**Hossfeld**" or "**Defendant**") for injunctive relief and damages.

## INTRODUCTION

1.      By this action, SageWater, a national plumbing and construction company focused on replacing piping in multi-story apartment, condominium and commercial buildings, brings these claims against Hossfeld, its former Vice President of Sales, for breach of non-solicitation and confidentiality/non-disclosure restrictive covenants contained in an employment agreement, for violations of the Defend Trade Secrets Act (the "**DTSA**"; 18 U.S.C. § 1836(b)) and the Virginia Uniform Trade Secrets Act, (the "**VUTSA**"; Va. Stat. § 59.1-336, *et seq*.), and for tortious interference with contract.

2.      Hossfeld began his employment with Plaintiff as Division Manager for the Norfolk Area Replumbing Division on or about March 17, 1997. Upon his promotion to Director of National Accounts, Hossfeld executed an employment agreement dated March 24, 2001, with SageWater, then known as Phoenix Renovation Corp. (the "**Employment Agreement,**" a copy of

which attached hereto as **Exhibit A**). Hossfeld remained continually employed by SageWater until January 13, 2023, when he resigned and, upon information and belief, began working for National Renovations, LLC d/b/a Repipe Specialists ("**Repipe Specialists**"), a direct competitor of SageWater, as its Vice President of Multi-Family.

3.      In the weeks leading up to his resignation, Hossfeld raided and copied to his personal devices SageWater's confidential, proprietary and trade secret information.

4.      On November 18, 2022, Mr. Hossfeld accessed and downloaded two spreadsheets from the SageWater Customer Relationship Management system, each a sales opportunities report containing project specific data including, past, present and potential future project names and addresses, estimated revenue, estimated close dates, and other highly sensitive and proprietary information. One of these downloads, "All Opportunities (Excl. Renew) 11-18-2022 11-31-43 AM.xlsx" contained the Company's historic and current potential book of business including data on nearly 2,500 actual or potential SageWater projects, whether Hossfeld was involved in the project or not. The other spreadsheet, titled "My Open Opportunities," included all of Hossfeld's open and active projects and opportunities.

5.      A week later, on November 25, 2022, Hossfeld accessed and "Air Dropped" multiple folders from his Company-issued laptop computer to a non-SageWater owned device labeled "David's iMac" containing more than 7500 files, including confidential and proprietary bids, proposals and customer information, on virtually every SageWater project for more than ten years, including hundreds of pricing spreadsheets, estimating templates and proposals/scope of work files on active and open bids.

6.      Between December 1, 2022 and January 3, 2023, Hossfeld accessed over 250 additional files including bids, proposals, presentations, company templates, billing, and

correspondence. The files accessed included information on approximately 40 SageWater projects, including projects with which Hossfeld had no involvement and no legitimate business reason to access and review. On at least two of those occasions, Hossfeld inserted a thumb drive into his Company-issued laptop while accessing the files.

7.      On January 12, 2023, one day before his resignation was effective, Hossfeld visited the "Clear browsing data" section of Google Chrome, deleting his internet browsing history for the prior two and half years.

8.      The access and downloads referenced in paragraphs four through six above shall be collectively referred to as the **"Downloads**."

9.      Upon information and belief, Hossfeld is utilizing the ill-gotten Downloads for his own benefit, and for the benefit of his new employer, Repipe Specialist, to unfairly compete with his prior employer, SageWater.

10.     SageWater is suffering current and ongoing injury, including what it believes to be the resultant loss of at least one project valued in excess of twenty million dollars, and is seeking immediate and permanent injunctive relief to prevent any further misuse of its confidential information, in addition to monetary damages.

## JURISDICTION AND VENUE

11.     SageWater is a Virginia limited liability company with its principal place of business in Alexandria, Virginia.

12.     Defendant Hossfeld is an individual, who, upon information and belief, resides in Virginia.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

14.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Hossfeld because he is a resident of Chesapeake, Virginia.  The Court also has personal jurisdiction over Hossfeld because the parties agreed in the Employment Agreement to submit to jurisdiction and venue in Alexandria, Virginia for any action or proceeding brought by the Employer arising out of or relating to the Employment Agreement. *See* Ex. A, Article 16.

16.     In addition, Hossfeld has subjected himself to the Court's personal jurisdiction under Va. Code §§ 8.01-328.1 and 8.01-330, because the causes of action in this Complaint arise out of Hossfeld's twenty plus years of employment with Plaintiff, a Virginia limited liability company, his extensive business transactions conducted in Virginia, and the fact that Hossfeld's improper conduct caused SageWater to suffer injury and damages within the Commonwealth of Virginia.

17.     Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in Alexandria, Virginia, where SageWater is headquartered.

18.     Further, venue is proper under Va. Code § 8.01-261 (1)(a)(1) and (2) because SageWater maintains its principal place of business in Alexandria, Virginia and regularly conducts its affairs and business activity in Alexandria, Virginia.

## **FACTUAL BACKGROUND**

### A.  **SageWater's Business**

19.    Since 1988, SageWater has repiped over 125,000 units and replaced over 35,000,000 feet of pipe in apartment buildings, condominiums and office buildings.

20.    SageWater has developed a turnkey innovative approach to repiping solutions which allows tenants and residents to remain in place while SageWater replaces the piping.

21.    SageWater conducts nearly all associated trade work, to include pipe replacement, drywall removal and installation, and painting themselves.

22.    SageWater markets and sells its services throughout the country and maintains Contractor licenses in 18 states, with multiple regional offices located throughout the country to serve its clients. In addition, SageWater employees hold 45 trade and professional licenses in 22 states, some of which do not require SageWater, LLC, the entity, to also be licensed to perform plumbing work.

23.    Importantly, SageWater is a private company. Accordingly, information regarding the Company, its volume, structure, and other business-related information is not publicly available.

24.    SageWater has invested and continues to invest, significant financial and intellectual property resources to develop and refine its services, approach and execution to ensure it continues to lead and innovate the repiping industry. This, together with SageWater's detailed marketing presentations and customer information, allows SageWater to maintain and foster its existing business relationships, expand those relationships to additional markets, and establish new relationships.

25.     As a result, SageWater has developed and accumulated customer lists, contacts, contact information, specific customer priorities, sales strategies, pricing procedures, marketing materials, customer presentations, business and construction means and methods, past, current, and prospective bids, bidding files and spreadsheets, specific customer proposals, specific presentations and pricing, contracts, take-offs, estimates, building layouts and negotiations (collectively "**Trade Secrets**"), all of which is proprietary and confidential, that provide SageWater with a competitive business advantage in the industry.

26.     SageWater takes substantial measures to protect the confidential nature of its Trade Secrets and other proprietary and confidential information by, among other protections: limiting access based on an employee's needs; maintaining such information in a secure, password protected file storage systems like Microsoft Sharepoint; requiring all employees to have unique passwords to access their computers; and by requiring individuals with access to such information to enter into written agreements containing confidentiality provisions and restrictive covenants, like the Employment Agreement Hossfeld executed.

**B.  Hossfeld's Employment with SageWater**

27.     Hossfeld started working with SageWater on or about March 17, 1997, as Division Manager for the Norfolk Area Replumbing Division.

28.     On or about March 24, 2001, Hossfeld was promoted to Director of National Accounts, at which point he executed the Employment Agreement with SageWater.

29.     On February 11, 2021, Hossfeld executed SageWater's Employee Code of Conduct that, among other things, reiterated Hossfeld's obligation to maintain the confidentiality of SageWater's business secrets and confidential information.

30.     Hossfeld was continuously employed by Plaintiff from March 2001 through his resignation on or about January 13, 2023.

31.     Prior to Hossfeld's resignation, Hossfeld was the Vice President of National Sales for SageWater.

32.     Given Hossfeld's position as Vice President of National Sales, Hossfeld had full access to SageWater's Trade Secrets and other proprietary and confidential information.

33.     Hossfeld, as part of SageWater's leadership team, was also privy to executive-level conversations discussing SageWater's growth, innovations, and strategy to pursue and market its services in various territories throughout the United States.

34.     The information to which Hossfeld was exposed is highly valuable, and directly relevant to SageWater's (and any competitor that may obtain the information) attempts to pursue business from existing and prospective customers and projects.

35.     As such, Hossfeld was entrusted with ensuring that the information was used solely for SageWater's exclusive benefit and was contractually obligated to protect SageWater's proprietary and confidential information.

36.     The restrictive covenants contained in the Employment Agreement were agreed upon in consideration for Hossfeld's employment, compensation, and the benefits he received as an employee of SageWater. *See* Ex. A. at p. 2.

37.     The Employment Agreement defines "**Confidential Information**" in Article 11(a) as:

> Information relating to Employer's customers, prospective customers, operations, finances, marketing strategies, and business that derives value from not being generally known to other Persons, including, but not limited to, technical or non-technical data, formulas, patterns, compilations (including compilations of customer information), programs (including service programs), devices, methods (including methods for bidding,

pricing, marketing, selling and providing Services), techniques, drawings, process (including process for bidding, pricing, marketing selling and providing Services), financial data (including general financial, marketing and sales data), or lists of actual or prospective customers or suppliers (including identifying information about those customers, prospective customers or suppliers and their requirements), whether or not reduced to writing. Confidential information subject to this Agreement may include information that is not a trade secret under applicable law, but information not constituting a trade secret only shall be treated as Confidential Information under this Agreement for a two (2) year period after the Termination Date.

The Confidential Information and the Trade Secret Information is sometimes collectively referred to as the "**Confidential and Trade Secret Information**."

38. Given Hossfeld's exposure and access to the Confidential and Trade Secret Information, Article 11(a) of his Employment Agreement further provides that "Employee shall use best efforts to protect Employer's Confidential Information. Employee will not use, except in connection with work for Employer, and will not disclose during *or after Employee's employment*, such Confidential Information." (Emphasis added).

39. To ensure, and to further protect SageWater's Confidential and Trade Secret Information and its business, Article 12 restrains Hossfeld from engaging in the following activities for at least one year, and in most cases eighteen (18) months from the date that his employment ceases:

(a) <u>Solicitation of Customers</u>. During the period of Employee's employment with Employer and for eighteen (18) months after the Termination Date, Employee will not solicit Customers for the purpose of providing or offering Services offered by Employer. For purposes of ARTICLE 12, "Customers" are customers of Employer's business to whom Employee, during the preceding two (2) year period, either directly or indirectly provided any Services on behalf of Employer (including those customers with whom Employee had any contact and to whom Services were provided under Employee's supervision in the performance of Employees' Duties), or about whom Employee possesses Confidential Information.

(b) <u>Solicitation of Prospective Customers</u>. During Employee's employment with Employer and for eighteen (18) months after the Termination Date, Employee will not solicit the prospective customers set forth in any list as referenced in ARTICLE 11(a) hereto for the purpose of providing or offering Services offered by Employer.

(g) <u>Future Employment Opportunities</u>. At any time before, and for one (1) year after, the termination Date, Employee shall provide any prospective employer or business partner with a copy of this Agreement, and upon accepting any employment or embarking upon a business venture, provide Employer with the new employer's or venture's name and a description of the services Employee or the venture will provide.

40. The Employment Agreement provides for injunctive relief and damages in the event Hossfeld breaches the Agreement. Specifically, Hossfeld agreed in Article 13:

(a) That compliance with the restrictive covenants contained in ARTICLES 11 and 12 is necessary to protect the business and goodwill of Employer; and

(b) That a breach of any such covenant will result in irreparable and continuing damage to Employer, for which money damages may not provide adequate relief.

41. Hossfeld further agreed that "in the event that he breaches or threatens to breach a restrictive covenant, Employer shall be entitled to both: (a) a preliminary or permanent injunction to prevent the continuation of harm; and (b) Money damages insofar as they can be determined." *See* Ex. A, Article 13.

## C. Hossfeld's Resignation and Access, Downloads and Transfers of SageWater's Confidential and Trade Secret Information

42. Hossfeld's last day of employment with SageWater was January 13, 2023.

43. Upon his resignation, Hossfeld was reminded of his continuing obligations owed under the Employment Agreement and applicable law, specifically including the obligation to maintain the confidentiality of SageWater's Confidential and Trade Secret Information, to refrain

from soliciting SageWater's actual and prospective customers, and to promptly deliver and return all documents in his possession relating to SageWater's business. *See* Ex. A, Articles 11, 12.

44. After Hossfeld resigned from SageWater, SageWater learned that during the final weeks of his employment, Hossfeld had improperly and unlawfully downloaded and transferred to himself hundreds of documents that contained SageWater's Confidential and Trade Secret Information, including projects he had no involvement with during his employment with the Company.

45. Upon investigation, SageWater learned that on or about November 18, 2022, Hossfeld downloaded from the SageWater Customer Relationship Management system a file titled "All Opportunities (Excl. Renew) 11-18- 2022 11-31-43 AM.xlsx" ("All Opportunities Spreadsheet"). Immediately prior to downloading the All Opportunities Spreadsheet, Hossfeld also downloaded a spreadsheet entitled "My Open Opportunities 11-18-2022 11-30-2025 AM.xlsx" from the Company's CRM system.

46. The information contained on the All Opportunities Spreadsheet contains Trade Secret and Confidential Information about SageWater's pending bids and proposals, including, but not limited to, customer names, estimated revenue, estimated close date, project addresses, information about the projects, and bid status. The information contained in this single spreadsheet represents over $1,000,000,000 in potential contracts.

47. Specifically, the All Opportunities Spreadsheet contained information pertaining to projects that have not yet been awarded by the prospective client such that they are available for competition.

48. The information contained on the All Opportunities Spreadsheet is prepared by SageWater as a result of extensive marketing and sales efforts, and is held in strict confidence.

49.     Hossfeld's improper review of the All Opportunities Spreadsheet provides him with SageWater's entire Company playbook and customer database, which allows Hossfeld to unfairly compete with SageWater on the open projects.

50.     Further, on or about November 25, 2022, Hossfeld "AirDropped"  the following folders from his Company owned  computer, (Sender Name "David Hossfeld") to his personal laptop (Recipient "David's iMac"): 1) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe Bids/Repipe Word; 2) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe Bids/Repipe Excel; 3) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe    Bids/Contracts;    and    4)/OneDrive    –    Sagewater/Sagewater Root/Sagewater/Presentations and Videos..

51.     From  an independent forensic analysis of the AirDropped folders, SageWater learned that (at the time of the analysis)  the files that Hossfeld AirDropped to his personal device contained over 7,500 files, including,   virtually every Company bid, proposal, and contract spanning more than ten  years, including contract proposals and bids that were active and pending at the time of his resignation.

52.     On or about December 6, 2022, there is additional AirDrop activity for the following folders on Hossfeld's SageWater owned computer: 1) /Users/david/iCloud Drive (Archive)/Desktop/Active Bids/2021; 2) /Users/david/iCloud Drive (Archive)/Desktop/Active Bids/2022.

53.     Further, between December 1, 2022, and January 3, 2023, Hossfeld accessed over 250 additional files including bids, proposals, presentations, company templates, billing, and correspondence. The files accessed included information on approximately 40 SageWater projects, including projects with which Hossfeld had no involvement, and therefore, no legitimate business

reason to access and review. On at least two of those occasions, Hossfeld inserted a thumb drive into his Company owned laptop while accessing the files.

54.     In an attempt to cover up his wrongdoing, on January 12, 2023, Hossfeld attempted to erase and clear his Browsing Data from his internet history.

55.     Upon information and belief, Hossfeld is using the information he gathered from the Downloads and the Confidential and Trade Secret Information in an effort to divert business from SageWater to his new employer, Repipe Specialists.

### D.  Cease and Desist Letters

56.     Hossfeld's last day with SageWater was January 13, 2023.

57.     Upon information and belief, Hossfeld commenced employment with SageWater's direct competitor Repipe Specialists immediately thereafter.

58.     SageWater did not learn of Hossfeld's duplicitous actions until early May 2023, when, as further described below, it received an email from an existing customer accidently sent to Hossfeld's old SageWater address attaching a contract in the name of Repipe Specialists.

59.     On May 12, 2023, SageWater sent a letter to Hossfeld demanding that he cease and desist violating his restrictive covenants and applicable law, and immediately return all SageWater documents within his possession (the "Cease and Desist Letter"). The Cease and Desist Letter also placed Hossfeld on a litigation hold and required a response to the letter by May 19, 2023. A true and correct copy of the May 12, 2023, Cease and Desist Letter sent to Hossfeld is attached hereto as **Exhibit B**. Hossfeld failed to respond.

### E.  Discovery of Hossfeld's Wrongdoing – "The Independent" Contract

60.     Hossfeld joined Repipe Specialists, a direct competitor, as its Vice President of Multi-Family.

61.    Upon information and belief, Hossfeld is performing substantially the same duties for Repipe Specialists as he did for SageWater, in the exact same product service space, with many of the same customers.

62.    However, Hossfeld is now armed with SageWater's intimate Confidential and Trade Secret Information. The competitive advantage this provides both Hossfeld and Repipe Specialists is immeasurable.

63.    Furthermore, upon information and belief, Hossfeld is using SageWater's Confidential and Trade Secret Information to solicit business from SageWater's current and prospective customers.

64.    On or about December 2021, prior to Hossfeld's resignation, Hossfeld was the lead sale person that was assigned to developing the bid proposal, establishing and maintaining the client relationship for a condominium project known as The Independent.

65.    As the lead salesperson, Hossfeld participated in the initial site visit to the Independent in or about January 2022, resulting in SageWater's first proposal submission to the Independent on or about January 21, 2022.

66.    The work and involvement to generate the initial bid for The Independent was exhaustive and cost SageWater significant time, effort, and financial resources, as demonstrated by Hossfeld's coordination of SageWater's efforts for proposal resubmission on February 18, 2022, followed by numerous communications and correspondence with The Independent and their legal counsel from February 21, 2022 to April 15, 2022, which resulted in a subsequent site visit on June 27, 2022, to gather further specific and pertinent information about the repiping project at The Independent to include in bid and contract proposals.

67.     Following the site visit on June 27, 2022, and in conjunction with prior correspondence, Hossfeld coordinated SageWater's efforts and submitted a proposal revision on July 8, 2022. This proposal contained information only Hossfeld and SageWater were aware of at the time. There was no open or formal submission request from The Independent that contained the details generated in SageWater's proposal, such that a competing bid could have been generated. Aside from The Independent, Hossfeld and SageWater were the only parties privy to the information critical to price and perform the repiping project at The Independent as of the July 8, 2022, proposal.

68.     Specifically, SageWater, with Hossfeld as the lead salesperson, assisted The Independent and its legal counsel with then existing litigation by tailoring the bid proposal to meet specific requests from The Independent and its legal counsel that could not have been ascertained by means other than site investigation and collaboration directly with The Independent and its legal counsel.

69.     On October 6, 2022, SageWater received a request from The Independent to make an offer of a final bid submission and Hossfeld coordinated the submission of this final offer on the same day ultimately resulting in The Independent's receipt of the dollars necessary to fund its significant repiping project. The process was extensive and took 11 months to reach a point of final proposal submission.

70.     Thereafter, The Independent began engaging in contract negotiations as evidenced by The Independent's notification to SageWater on October 27, 2022, that the contract form provided by SageWater was in legal review.  In response to requests from The Independent on November 7, 2022, Hossfeld then provided insurance information to The Independent on November 8, 2022.

71.     On January 20, 2023, The Independent assured SageWater that it was "locked in…as the contractor of choice for this job." A true and correct copy of the January 20, 2023, email is attached hereto as **Exhibit C**.

72.     Thereafter, SageWater and The Independent exchanged draft contracts.

73.     Surprisingly, on May 3, 2023, SageWater received an email to Hossfeld's SageWater email address requesting additional information. A true and correct copy of the May 3, 2023, email is attached hereto as **Exhibit D**.  On May 5, 2023, SageWater received another email to Hossfeld's SageWater email address attaching a draft contract for The Independent *in the name of Hossfeld's new employer, Repipe Specialists.*

74.     SageWater's suspicions were further aroused when, after a series of emails with the General Manager from The Independent, on May 11, 2023, The Independent, on two separate occasions, attempted to recall the email and attached contract that was seemingly inadvertently sent to Hossfeld's SageWater email address. A true and correct copy of the recall attempts are attached hereto as **Exhibit E**.

75.     The contract sent by The Independent on or about May 5, 2023, was similar in substance and form to that submitted by SageWater prior to Hossfeld's resignation, with SageWater's name replaced with Repipe Specialists.

76.     Given the volume of documents stolen and Repipe Specialists' eleventh-hour substitution on The Independent project, it appears that Hossfeld violated both the confidentiality and non-solicitation provisions included in the Employment Agreement, each of which were in effect during the relevant time period.

77.     Upon information and belief, Hossfeld improperly and unlawfully used SageWater's Confidential and Trade Secret information to gain an unfair and illicit competitive advantage in the marketplace, including, but not limited to, The Independent project.

78.     The Independent project alone was valued at more than $20 million, the loss of which has caused SageWater to suffer millions of dollars of damage in costs and lost profits.

79.     Moreover, given the vastness of the documents converted by Hossfeld through the Downloads, Plaintiff anticipates that further discovery will shed light on additional projects or opportunities lost by SageWater as a direct result of Hossfeld's unlawful conduct.

80.     With every passing day, Hossfeld's retention and use of SageWater's Confidential and Trade Secret Information is causing significant present and future harm to SageWater.

81.     All conditions precedent to the institution of this action have occurred, been performed or excused.

82.     SageWater has retained counsel to represent it in this matter and is obligated to pay counsel a reasonable fee for its services.

83.     If SageWater prevails in this matter, it will be entitled to recover its reasonable costs and attorneys' fees pursuant to Article 14 of the Employment Agreement and applicable law.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### (pursuant to the Defend Trade Secrets Act of 2016)

84.     SageWater repeats and realleges Paragraphs 1 through 83 as if fully set forth herein.

85.     SageWater seeks to have its Trade Secrets, as defined by 18 U.S.C. § 1839(3), protected from misappropriation and/or use by Hossfeld.

86.     SageWater's Trade Secret Information is not publicly known, and is related to services used in, or intended for use in, interstate commerce.

87.     SageWater's Trade Secrets have independent economic value, whether actual or potential, from not being generally known or not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

88.     As set forth in Paragraph 26 above, SageWater takes substantial measures to protect the confidential nature of its Trade Secrets.

89.     Up and until Hossfeld's resignation, Hossfeld maintained a position of trust and confidence at SageWater, and, as such, was privy to executive-level information, conversations and SageWater's Trade Secrets.

90.     Hossfeld had a duty and obligation under his Employment Agreement and applicable law to maintain the secrecy of the Trade Secrets.

91.     In the days and weeks leading up to Hossfeld's resignation, Hossfeld viewed, downloaded, and transferred thousands of files from SageWater's computer system, many of which contain confidential information and Trade Secrets.

92.     Hossfeld knowingly acquired SageWater's Trade Secrets by improper and unlawful means and transferred the documents and files to his own personal devices.

93.     The Independent project is but one example of Hossfeld's use and misappropriation of SageWater's Trade Secrets.

94.     Upon information and belief, without SageWater's express or implied consent, Hossfeld has used and disclosed or intends to use and disclose SageWater's Trade Secrets for his own benefit, and for the benefit of his new employer, Repipe Specialist.

95.     Upon information and belief, Hossfeld has used SageWater's Trade Secrets in his new role as Vice President of Multi-Family for Repipe Specialists to divert SageWater's current

and prospective customers to his new employer, including, but not limited to, The Independent project.

96.    Hossfeld's actual and/or threatened misappropriation of SageWater's Trade Secrets was knowing, willful, and malicious.

97.    Hossfeld's conduct constitutes a violation of the DTSA.

98.    There is a substantial likelihood that SageWater will prevail on the merits of its claim.

99.    Hossfeld's actual and/or threatened misappropriation of SageWater's Trade Secrets will cause SageWater substantial and immediate irreparable injury, including the actual and potential loss of specific projects, client relationships, loss of market share and goodwill, as well as the exposure and loss of its Trade Secrets, for which no adequate remedy at law exists.

100.    Injunctive relief will serve the public interest by preventing Hossfeld from profiting from the unauthorized use of protected trade secrets.

101.    Unless enjoined, Hossfeld will continue to use SageWater's Trade Secrets for his personal benefit and for the benefit of his new employer, all to SageWater's detriment.

102.    Because SageWater's business will be irreparably injured by Hossfeld's theft of, and continued use of, SageWater's Trade Secret Information, SageWater is entitled to injunctive relief and the recovery of compensatory damages, exemplary damages, special damages including lost profits, and attorneys' fees.

**WHEREFORE**, SageWater requests the Court:

    i.    Preliminarily and permanently enjoin Hossfeld and anyone working in concert with him from disclosing or using SageWater's Confidential and Trade Secret Information for his benefit or for the benefit of any other party;

    ii.   Preliminarily and permanently enjoin Hossfeld and anyone working in concert with him, requiring him/them to maintain the confidentiality of SageWater's Confidential and Trade Secret Information, and to return, destroy or delete all such information in his possession, custody or control;

    iii.   Award SageWater damages, including statutory exemplary damages against Hossfeld, for the misappropriation and/or threatened misappropriation or use of SageWater's Confidential and Trade Secret Information; and

    iv.   Award SageWater reasonable attorneys' fees, costs, and interest, and such other and further relief pursuant to 18 U.S.C. § 1836(b), that this Court deems just and proper.

## <u>COUNT II – MISAPPROPRIATION OF TRADE SECRETS</u>
### (pursuant to the VUTSA, § 59.1-336, *et seq.*)

103.    SageWater repeats and realleges Paragraphs 1 through 83 as if fully set forth herein.

104.    SageWater seeks to have its Trade Secrets, as defined by Va. Stat. § 59.1-336 protected from misappropriation and/or use by Hossfeld.

105.    SageWater's Trade Secrets have independent economic value, whether actual or potential, from not being generally known or not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

106.    As set forth in Paragraph 26 above, SageWater takes substantial measures to protect the confidential nature of its Trade Secrets.

107.    Up and until Hossfeld's resignation, Hossfeld maintained a position of trust and confidence at SageWater, and, as such, was privy to executive-level information, conversations and SageWater's Trade Secrets.

108.    Hossfeld had a duty and obligation under his Employment Agreement and applicable law to maintain the secrecy of the Trade Secrets.

109.    In the days and weeks leading up to Hossfeld's resignation, Hossfeld accessed, viewed, downloaded, and transferred thousands of files from SageWater's computer system, many of which contained SageWater's Confidential and Trade Secret Information.

110.    Hossfeld knowingly acquired SageWater's Trade Secret Information by improper and unlawful means and transferred the documents and files to his own personal devices.

111.    The Independent project is but one example of Hossfeld's use and misappropriation of SageWater's Trade Secrets.

112.    Upon information and belief, without SageWater's express or implied consent, Hossfeld has used or disclosed or intends to use or disclose SageWater's Trade Secrets for his own benefit, and for the benefit of his new employer, Repipe Specialist.

113.    Upon information and belief, Hossfeld has used SageWater's Trade Secret Information to assist in his new role as Vice President of Multi-Family and in an attempt to divert SageWater's current and prospective customers, including, but not limited to, The Independent project to his new employer.

114.    Hossfeld's actual and/or threatened misappropriation of SageWater's Trade Secrets was knowing, willful, and malicious.

115.    Hossfeld's conduct constitutes a violation of the VUTSA.

116.    There is a substantial likelihood that SageWater will prevail on the merits of its claim.

117.    Hossfeld's actual and/or threatened misappropriation of SageWater's Trade Secrets will cause SageWater substantial and immediate irreparable injury, including the actual and

potential loss of client relationships, loss of market share and goodwill, as well as the exposure and loss of its Trade Secrets for which no adequate remedy at law exists.

118.    Injunctive relief will serve the public interest by preventing Hossfeld from profiting from the unauthorized use of a competitor's trade secrets.

119.    Unless enjoined, Hossfeld will continue to use SageWater's Trade Secrets for his personal benefit and to SageWater's detriment. Because SageWater's business will be injured in its efforts to sell its services, it is entitled to injunctive relief and the recovery of compensatory damages, punitive damages, special damages including lost profits, and attorneys' fees.

**WHEREFORE**, SageWater requests the Court:

i.    Preliminarily and permanently enjoin Hossfeld and anyone working in concert with him from disclosing or using SageWater's Confidential and Trade Secret Information for his benefit or for the benefit of any other party;

ii.    Preliminarily and permanently enjoin Hossfeld and anyone working in concert with him, compelling him/them to maintain the confidentiality of SageWater's Confidential and Trade Secret Information, and to return, destroy or delete all such information in his possession, custody or control;

iii.    Award SageWater damages, including statutory punitive damages against Hossfeld, for the misappropriation and/or threatened misappropriation or use of SageWater's Confidential and Trade Secret Information; and

iv.    Award SageWater reasonable attorneys' fees, costs, and interest, and such other and further relief pursuant to Va. Stat. § 59.1-336, *et seq.*, that this Court deems just and proper.

## COUNT III- BREACH OF CONTRACT
### (Breach of the Confidentiality Provision)

120.    SageWater repeats and realleges Paragraphs 1 through 83 as if fully set forth herein.

121.    SageWater and Hossfeld are parties to the Employment Agreement, a written contract executed by Hossfeld.

122.    The Employment Agreement is a valid and binding contract, supported by adequate consideration and is fully enforceable by SageWater against Hossfeld.

123.    Article 11 of the Employment Agreement contains a valid and enforceable confidentiality restrictive covenant that is reasonably tailored to protect SageWater's legitimate business interests.

124.    Hossfeld is obligated to maintain the confidentiality of SageWater's Trade Secrets for so long as they remain confidential and proprietary to SageWater.

125.    Hossfeld's is obligated is to maintain the confidentiality of SageWater's Confidential Information that does not rise to the level of a Trade Secret for a period of two years after Hossfeld's resignation.

126.    SageWater has a legitimate business interest in enforcing the confidentiality covenant contained in the Employment Agreement for the time period specified therein.

127.    Despite the binding contractual restrictions, Hossfeld violated and continues to violate the confidentiality covenant contained in the Employment Agreement by improperly viewing, downloading and transferring SageWater's Confidential and Trade Secret Information, and using same for his benefit and for the benefit of his new employer Repipe Specialists.

128.    Additionally, pursuant to Section 11(b), Hossfeld was obligated to promptly deliver to SageWater all materials, plans, records, notes, or other papers and any copies in his possession or control relating in any way to SageWater's services or business. Despite demand, Hossfeld has

failed and refused to return SageWater's Confidential and Trade Secret Information or any other information in his possession or control relating to SageWater's business.

129.    Therefore, Hossfeld breached and continues to breach the Employment Agreement by performing the acts set forth above.

130.    If not enjoined, Hossfeld's violations will cause immediate, substantial, permanent, and irreparable harm to SageWater including, but not limited to, loss of Confidential and Trade Secret Information, lost investments, and damage to its business reputation and goodwill, all of which cannot be adequately compensated by monetary damages.

131.    Although some damages may be quantified, including the millions of dollars of lost profit resulting from the diversion of The Independent project from SageWater to Repipe Specialists, SageWater is without an adequate remedy at law because it may be impossible to determine the extent to which SageWater has lost business and revenues, the damage to SageWater's goodwill, the effect on pricing in the marketplace, and other unforeseen damage caused by Hossfeld's breaches of the Employment Agreement.

132.    Hossfeld acknowledges that SageWater has no adequate remedy at law for a breach of a restrictive covenant in his Employment Agreement. *See* Ex. A, Article 13.

133.    There is a substantial likelihood that SageWater will prevail on the merits of its claim.

134.    Injunctive relief will serve the public interest by ensuring that employers, such as SageWater, receive the protection from unfair competition caused by the breach of valid restrictive covenants by a former employee, like Hossfeld, who had access to SageWater's Confidential and Trade Secret Information, but no right to keep and use this information in order to unfairly compete with the Company.

135.    Accordingly, SageWater is seeking immediate injunctive and other relief to prevent Hossfeld from continuing to irreparably harm SageWater by using, profiting from, disclosing, or otherwise disseminating SageWater's Confidential and Trade Secret Information.

**WHEREFORE**, SageWater requests the Court:

i.    Preliminarily and permanently enjoin Hossfeld or anyone working in concert with him from disclosing or using SageWater's Confidential and Trade Secret Information that he obtained during his employment at SageWater, on his own behalf, or for the benefit of any entity or joint venture other than SageWater, including, but not limited to, Repipe Specialists, for as long as that information remains confidential and proprietary to SageWater;

ii.    Preliminarily and permanently enjoin Hossfeld or anyone working in concert with him from disclosing or using SageWater's confidential information not deemed a Trade Secret that he obtained during his employment at SageWater, on his own behalf, or for the benefit of any entity or joint venture other than SageWater, including, but not limited to, Repipe Specialists, for two (2) years from the date of such Order, or as properly extended for a period of time equal to that period that Hossfeld has been in breach of the restrictive covenant;

iii.    Award damages in favor of SageWater and against Hossfeld for lost revenues, lost profits, and other compensatory damages as this Court may deem just, necessary, and proper, in amounts to be proven at trial; and

iii.    Award SageWater its reasonable costs and attorneys' fees pursuant to Article 14 of the Employment Agreement, together interest, and such other and further relief that this Court deems just and proper.

## COUNT IV- BREACH OF CONTRACT
### (The Non-Solicitation Provision)

136.    SageWater repeats and realleges Paragraphs 1 through 83 as if fully set forth herein.

137.    SageWater and Hossfeld are parties to the Employment Agreement, a written contract executed by Hossfeld.

138.    The Employment Agreement is a valid and binding contract, supported by adequate consideration and is fully enforceable by SageWater against Hossfeld.

139.    Article 12 of the Employment Agreement contains a valid and enforceable non-solicitation covenant that is reasonably tailored to protect SageWater's legitimate business interests.

140.    Pursuant to the non-solicitation covenant, Hossfeld is prohibited, for a period of 18 months, from soliciting SageWater's actual and prospective customers for whom he directly provided services, or who were serviced by other SageWater employees under Hossfeld's supervision, in the two preceding his resignation.

141.    SageWater has a legitimate business interest in enforcing the restrictive covenants contained in the Employment Agreement.

142.    Despite the binding contractual restrictions, Hossfeld violated and continues to violate the restrictive covenants contained in the Employment Agreement.

143.    Upon information and belief, Hossfeld is directly or indirectly persuading, encouraging, inducing, and soliciting past, current or prospective customers or business relations to divert their business from SageWater, and transfer same to its direct competitors, including Repipe Specialists.

144. Upon information and belief, Hossfeld is interfering with the relationship between SageWater and its current or prospective customers or other business relations in direct violation of Article 12 of the Employment Agreement.

145. Therefore, Hossfeld breached and continues to breach the Employment Agreement by performing the acts set forth above.

146. SageWater contracted with Hossfeld to receive the benefit of a full eighteen (18) months of non-solicitation, and is entitled to the benefit of its bargain for the entire period so contracted.

147. If not enjoined, Hossfeld's violations will cause immediate, substantial, permanent, and irreparable harm to SageWater including, but not limited to, lost investments, lost profits, damage to its customer relations, and damage to its business reputation and goodwill, all of which cannot be adequately compensated by monetary damages.

148. Although some damages may be quantified, including the millions of dollars of lost profit resulting from the diversion of The Independent project from SageWater to Repipe Specialists, SageWater is without an adequate remedy at law because it may be impossible to determine the extent to which SageWater has lost business and revenues, the damage to SageWater's goodwill, the effect on pricing in the marketplace, and other unforeseen damage caused by Hossfeld's breaches of the Employment Agreement.

149. Hossfeld acknowledges that SageWater has no adequate remedy at law for a breach of a restrictive covenant in his Employment Agreement. *See* Ex. A, Article 13.

150. There is a substantial likelihood that SageWater will prevail on the merits of its claim.

151.    Injunctive relief will serve the public interest by ensuring that employers, such as SageWater, that expend significant resources training its employees and developing customer relationships, and conditioning offers of employment or promotion on the employees agreement not to solicit an employer's customers for a reasonable period of time after termination, are entitled to the bargained for protection from unfair competition caused by the breach of a valid restrictive covenant.

152.    Accordingly, SageWater is seeking immediate injunctive and other relief to prevent Hossfeld from continuing to irreparably harm SageWater by soliciting SageWater's current and prospective customers as detailed in the Employment Agreement.

**WHEREFORE**, SageWater requests the Court:

1.  Preliminarily and permanently enjoin Hossfeld and anyone working in concert with him from directly or indirectly, soliciting existing and prospective customers of SageWater, including, but not limited to, The Independent, for any business that is competitive to the business of SageWater for a period of eighteen (18) months from the date of such Order, or as properly extended for a period of time equal to that period that Hossfeld has been in breach of the restrictive covenant;

ii.  Award damages in favor of SageWater and against Hossfeld for lost revenues, lost profits, and other compensatory damages as this Court may deem just, necessary, and proper, in amounts to be proven at trial; and

iii.  Award SageWater its reasonable costs and attorneys' fees pursuant to Article 14 of the Employment Agreement, together interest, and such other and further relief that this Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH
## CONTRACT EXPECTANCY

153.    SageWater repeats and realleges Paragraphs 1 through 83 as if fully set forth herein.

154.    As set forth in paragraphs 64-75, Hossfeld was SageWater's lead salesman on The Independent project, valued in excess of $20,000,000.

155.    As demonstrated by Exhibit C attached hereto, The Independent advised SageWater that it was "locked in" as the contractor of choice for the repiping project.

156.    Thereafter, the parties negotiated and agreed to a specific scope of work and pricing, and was in the process of reducing same to a final signed binding agreement.

157.    The negotiations and draft contract with The Independent reached the point where it was a valid contract expectancy. A copy of the draft contract is not being attached hereto due to the confidentiality of the of the information contained therein, but is available for inspection by the Court and the parties hereto.

158.    Hossfeld, having been heavily involved in the bidding and negotiations for the project, knew of SageWater's expectancy of contract with The Independent.

159.    Upon information and belief, Hossfeld interfered with that contract expectancy by diverting The Independent project from SageWater to his new employer, Repipe Specialists.

160.    Hossfeld used improper means and methods to interfere with The Independent contract expectancy by improperly using SageWater's misappropriated Confidential and Trade Secret Information, specifically including the contact information for The Independent, and SageWater's specific bid, pricing and draft contract for the repiping project at The Independent.

161.    As a direct and proximate result of Hossfeld's interference, SageWater has been injured by losing the contract for The Independent project.

162.    Hossfeld's actions were wanton, willful and performed with reckless disregard for the rights of SageWater.

WHEREFORE, Sagewater demands judgment against Hossfeld for compensatory damages including lost profits, punitive damages, interest and costs, together with such other relief as the Court deems just and proper.

Dated this 13th day of June 2023.

**AKERMAN LLP**
750 Ninth Street, N.W.
Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Facsimile: (202) 393-5959

By:  */s/ J. Travers Clark*
   J. Travers Clark, Esq.
   Virginia Bar Number: 94706
   E-mail: trav.clark@akerman.com
   *Counsel for Plaintiff Sagewater, LLC*

 **OF COUNSEL (pro hac vice applications forthcoming):**

**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

Andrew P. Gold, Esq.
Florida Bar No. 612367
Primary email: andrew.gold@akerman.com
Secondary email: jill.parnes@akerman.com
Jason S. Oletsky, Esq.
Florida Bar No. 9301
Primary email: jason.oletsky@akerman.com
Secondary email: jill.parnes @akerman.com
Scott J, Miller, Esq.
Florida Bar No. 1001148
Primary email: scott.miller@akerman.com

Secondary email: charlene.cerda@akerman.com
*Counsel for Plaintiff Sagewater, LLC*