## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

SAGEWATER, LLC,                                    Case No.: 1:23-cv-00770

Plaintiff,

v.

DAVID HOSSFELD and
NATIONAL RENOVATIONS, LLC
d/b/a REPIPE SPECIALISTS,

Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REPIPE SPECIALISTS

**AKERMAN LLP**
750 Ninth Street, N.W.
Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Facsimile:  (202) 393-595

**AKERMAN LLP**
201 E. Las Olas Blvd.
Suite 1800
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Facsimile:  (954) 463-2224

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AGAINST REPIPE SPECIALISTS ........................................ 1

I.      INTRODUCTION .................................................................................................... 1

II.     PROCEDURAL HISTORY........................................................................................ 2

III.    BACKGROUND FACTS .......................................................................................... 3

        A.      Hossfeld's Employment Agreement, Employment with SageWater, and
                Access to Confidential and Trade Secret Information ............................................ 4

        B.      SageWater's Extensive Marketing Efforts and Hossfeld's Role Therein.............. 5

        C.      Hossfeld's Resignation and Misappropriation of SageWater's Confidential
                and Trade Secret Information ................................................................................ 6

        D.      Repipe Specialists' Interference – The Independent Project ................................. 9

        E.      The Washington and Magnolia Projects ............................................................... 10

        F.      The Ironbridge Project .......................................................................................... 12

        G.      Cease and Desist Letters ....................................................................................... 13

IV.     MEMORANDUM OF LAW ...................................................................................... 14

        A.      STANDARD FOR PRELIMINARY INJUNCTIONS.......................................... 14

        B.      SAGEWATER HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS
                ON THE MERITS ................................................................................................. 14

                1.      SageWater has a Substantial Likelihood of Success on the Merits
                        of Counts I and II for Misappropriation of Trade Secrets ........................ 15

                2.      SageWater has a Substantial Likelihood of Success on the Merits
                        of Counts VI for Tortious Interference with Business Expectancy .......... 20

        C.      SAGEWATER NEED NOT PROVE IRREPARABLE HARM FOR
                COUNTS I AND II, THE TRADE SECRET COUNTS...................................... 22

        D.      SAGEWATER WILL SUFFER IRREPARABLE INJURY ABSENT A
                PRELIMINARY INJUNCTION ............................................................................ 23

        E.      THE INJURY SAGEWATER WILL SUFFER OUTWEIGHS THE
                HARM TO REPIPE SPECIALISTS ..................................................................... 25

        F.      THE GRANTING OF A PRELIMINARY INJUNCTION IS IN THE
                PUBLIC INTEREST .............................................................................................. 26

CONCLUSION.......................................................................................................................... 27

CERTIFICATE OF SERVICE .................................................................................................. 29

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*17th St. Assocs., LLP v. Markel Int'l. Ins. Co. Ltd.*,
  373 F. Supp. 2d 584 (E.D. Va. 2005) ....................................................................21

*Allied Prop. and Casualty Ins. Co. v. Zenith Aviation, Inc.*,
  2019 WL 10960569 (E.D. Va. July 2, 2019) .........................................................19

*Audio-Video Grp., LLC v. Green*,
  No. 1:14cv169, 2014 WL 793535 (E.D. Va. Feb. 26, 2014)......................14, 23, 26

*Bowe Bell & Howell Co. v. Harris*,
  145 F. App'x 401 (4th Cir. 2005) ..........................................................................14

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
  249 F.3d 204 (4th Cir. 2001) .................................................................................21

*Duggin v. Adams*,
  360 S.E.2d 832 (Va. 1987)......................................................................................20

*Environmental Defense Fund, Inc. v. Lamphier*,
  714 F. 2d 331 (4th Cir. 1983) ................................................................................22

*Hilton Worldwide, Inc. v. Glob. Advert., Inc.*,
  No.: 1:15cv1001, 2016 WL 8223436 (E.D. Va. Apr. 8, 2018).........................24, 25

*Home Funding Grp., LLC v. Myers*,
  No.: 1:06cv1400 (JCC), 2006 WL 6847953 (E.D. Va. Dec. 14, 2006)............... 23, 24, 25, 26

*Integrated Global Services, Inc. v. Mayo*,
  No.: 3:17cv563, 2017 WL 4052809 (E.D. Va. Sept. 13, 2017)........................ 23, 24

*McNamara v. Virginia Employment Commission*,
  54 Va. App. 616 (Ct. App. 2009)............................................................................19

*Nabisco Brands, Inc. v. Conusa Corp*,
  982 F. 2d 74 (4th Cir. 1989) .............................................................................14, 15

*Newport News Industrial v. Dynamic Testing*,
  130 F. Supp. 2d 745 (E.D. Va. 2001) ...............................................................16, 17

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ...........................................................................14, 15

*Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*,
   698 F. Supp. 2d 602 (E.D. Va. 2010) ...................................................................26

*Space Systems/Loral, LLC v. Orbital ATK, Inc.*,
   306 F. Supp. 3d 845 (E.D. Va. 2018) ....................................................15, 16, 17

*Stultz v. Va. Dep't of Motor Vehicles*,
   185 F. Supp. 3d 890 (W.D. Va. 2015) .................................................................20

*T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*,
   385 F.3d 836 (4th Cir. 2004) ..............................................................................20

*Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*,
   330 F. Supp. 2d 668 (E.D. Va. 2004) ..................................................................16

*Virginia Beach S.P.C.A., Inc. v. South Hampton Roads Veterinary Ass'n*,
   229 Va. 349 (1985) ..............................................................................................22

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................14

**Statutes**

Defend Trade Secrets Act, 18 U.S.C. 1836 ...........................................................1, 15, 22

42 U.S.C. § 6928 ..............................................................................................................22

Section 59.1-337, Va. Code ..............................................................................................22

Virginia Uniform Trade Secrets Act, Va. Stat. § 59.1-336, *et seq*. ......................1, 15, 16

**Rules**

Rule 65 ..............................................................................................................................14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

SAGEWATER, LLC,

                                                       Case No.: 1:23-cv-00770

Plaintiff,

v.

DAVID HOSSFELD and
NATIONAL RENOVATIONS, LLC
d/b/a REPIPE SPECIALISTS,

Defendants.

_____/

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AGAINST REPIPE SPECIALISTS

       Plaintiff, Sagewater, LLC ("**SageWater**," "**Company**," "**Employer**" or "**Plaintiff**") files this Memorandum of Law in Support of its Motion for Preliminary Injunction Against National Renovations, LLC d/b/a Repipe Specialists ("**Repipe Specialists,**" "**New Employer**" or **Employer Defendant**").

## I.      INTRODUCTION

       On July 12, 2023, this Court heard oral argument on SageWater's Motion for Preliminary Injunction against its former employee, Defendant, David Hossfeld ("**Hossfeld**"). At the conclusion of the hearing, the Court announced its ruling finding that Plaintiff met its burden of establishing the elements necessary to obtain injunctive relief, including a substantial likelihood of success on the merits, on its claims against Hossfeld for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), the Virginia Uniform Trade Secrets Act, (the "VUTSA"; Va. Stat. § 59.1-336, *et seq*.), and breach of both the confidentiality and non-solicitation provisions

1

contained in the SageWater – Hossfeld Employment Agreement.[1] Thereafter, on July 13, 2023, this Court entered its written order granting injunctive relief (ECF No. 24) (the "Injunction"), enjoining Hossfeld from (i) disclosing or using any of SageWater's Confidential or Trade Secret Information, (ii) ordering the return of SageWater's Confidential or Trade Secret Information in Hossfeld's possession, custody or control, and (iii) prohibiting Hossfeld from directly or indirectly soliciting SageWater's existing and prospective customers with which Hossfeld had direct or indirect contact with the purpose of obtaining business for a period of eighteen (18) months from the date of the Injunction.

Plaintiff has now found it necessary to file an Amended Complaint (ECF No. 40) joining Hossfeld's New Employer, Repipe Specialists, and by this Motion, seeks to extend the Injunction to include the New Employer. Indeed, SageWater has learned that, despite having received a cease and desist letter and being provided courtesy copies of both the Complaint and motion for preliminary injunctive relief (including the upcoming hearing date), Repipe Specialists ignored its employee's clear liability – and its own – and instead chose to move forward with a contract with not only The Independent on June 30, 2023 (just days prior to the hearing on the initial Injunction), but also on numerous other projects where Hossfeld was the lead contact on behalf of SageWater prior to his resignation.

## II.    PROCEDURAL HISTORY

On June 13, 2023, Plaintiff filed its Complaint ("Complaint"; ECF No. 1) against Hossfeld, alleging that he misappropriated SageWater's Confidential and Trade Secret Information prior to his resignation and subsequent employment with SageWater's direct competitor, Defendant Repipe Specialists. Simultaneously with the filing of the Complaint, SageWater filed its Motion

---

[1] Transcript of Motion for Preliminary Injunction heard on July 12, 2023 at 2:30 p.m. ("Transcript" or "Tr.") at pp. 28-31.

for Preliminary Injunction ("Motion for Preliminary Injunction"; ECF No. 2) and Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 3). The Court heard oral argument on the Motion for Preliminary Injunction on July 12, 2023, announced its ruling granting the motion from the bench, and followed up with the written Injunction on July 13, 2023.

Plaintiff has now filed an Amended Complaint joining Repipe Specialists, containing counts for Misappropriation of Trade Secrets pursuant to the DTSA against both Hossfeld and Repipe Specialists (Count I),  Misappropriation of Trade Secrets pursuant to the VUTSA against both Hossfeld and Repipe Specialists (Count II),  Breach of Contract – Confidentiality against Hossfeld (Count III), Breach of Contract – Solicitation against Hossfeld (Count IV), Tortious Interference with Contract Expectancy against Hossfeld regarding actual and prospective customers (Count V), Tortious Interference with Contract Expectancy against Repipe Specialists regarding actual and prospective customers (Count VI), and Tortious Interference with Contract against Repipe Specialists regarding Hossfeld's Employment Agreement (Count VII).

### III.   BACKGROUND FACTS

The facts are detailed in Plaintiff's Complaint, Motion for Preliminary Injunction, Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction, the Amended Complaint and in the declarations filed in support hereof, which are incorporated by reference. By way of summary, SageWater is a Virginia based company and is a national leader in plumbing pipe replacement and related construction in commercial and multifamily buildings, specifically including hi-rise condominiums. *See* Declaration of David Schanuel filed simultaneously herewith ("**Schanuel Dec**") at ¶ 3. Since 1988, SageWater has replaced over 35 million feet of pipe in over 125,000 units using its innovative turnkey approach to repiping solutions. *Id*. ¶¶ 4, 6. SageWater has invested and continues to invest, significant resources to further develop and refine its product services, construction means and methods, and to develop and expand its customer base and

markets, through analysis, marketing, presentations and person to person visits and contacts, all of which is maintained in a database on SageWater's computer system. *Id.* ¶¶ 9-10.

As detailed in the Amended Complaint and supporting declarations, SageWater takes substantial measures to protect its Confidential and Trade Secret Information.[2] *Id.* ¶ 11. Nevertheless, Hossfeld and Repipe Specialists misappropriated the information for their benefit. ¶¶ 27-60.

### A.     Hossfeld's Employment Agreement, Employment with SageWater, and Access to Confidential and Trade Secret Information

Hossfeld was employed by SageWater from on or about March 17, 1997 through January 13, 2023, when he resigned his position. His Employment Agreement, a copy of which is attached hereto as **Exhibit 1**, contains confidentiality and non-solicitation provisions relevant to the instant matter. *See* Schanuel Dec.¶¶ 12, 20-22. Specifically, the Employment Agreement restricts Hossfeld from soliciting SageWater's current and prospective customers for a period of eighteen (18) months. *See* Exhibit 1 at Article 12. Additionally, the Employment Agreement protects SageWater's Trade Secret Information for so long as that information remains confidential, and protects SageWater's Confidential Information that does not rise to the level of a Trade Secret for two (2) years after Hossfeld's termination date. *Id.* at Article 11(a). Hossfeld acknowledged the restrictive covenants are necessary to protect SageWater's legitimate business interests, and that any breach thereof will result in irreparable and continuing damage to SageWater. *Id.* at Article 13. Additionally, on or about February 11, 2021, Hossfeld executed SageWater's Employee Code of Conduct, a copy of which is attached hereto as **Exhibit 2**, that reiterates Hossfeld's obligation to maintain the confidentiality of SageWater's Confidential and Trade Secret Information and

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Amended Complaint.

warns of disciplinary action up to and including termination for a violation. *See* Schanuel Dec. ¶ 16; Exhibit 2, pp. 1-2.

Given Hossfeld's access to SageWater's Confidential and Trade Secret Information, the restrictive covenants are necessary to protect SageWater's legitimate business interests. Prior to Hossfeld's resignation, he served as Vice President of National Sales for SageWater. *See* Schanuel Dec. ¶ 14. This high-ranking position within the Company provided Hossfeld with full access to SageWater's Confidential and Trade Secret Information, including access to all bids and proposals and executive-level conversations discussing SageWater's growth, opportunities, innovations and strategies to pursue additional customers, contracts, and plans to expand into additional territories. *Id*. ¶¶ 17-19. The information to which Hossfeld was exposed is invaluable, and would certainly provide any competitor not entitled thereto, such as Repipe Specialists, with an unfair competitive advantage. *Id.* ¶ 19.

**B.    SageWater's Extensive Marketing Efforts and Hossfeld's Role Therein**

SageWater spends hundreds of thousands of dollars per year on its unique marketing strategy and research efforts, which includes attending trade shows, direct to consumer marketing and extensive research to identify prospective customers. *See* Declaration of Eric Lecky filed simultaneously herewith ("**Lecky Dec**.") ¶¶ 8-9. Once SageWater identifies a prospective customer, SageWater sends direct mail and email advertisements to the prospective customers. *Id.* ¶ 11. The advertisements provide the prospective customers with information about SageWater and directs the prospective customers to contact SageWater to learn  more information about SageWater and the repiping process. *Id.* ¶ 12. The majority of these marketing materials identified Hossfeld as the contact person for any potential customer. *Id.* ¶ 16. Further, inquiries from prospective customers to SageWater generally were forwarded to Hossfeld. Thereafter, Hossfeld would be the customer's point of contact throughout the sales, proposal and bid process, charged

with developing the client relationship for the benefit of SageWater. *Id.* ¶ 18. To be clear, the vast majority of leads pursued by Hossfeld were provided to him as a direct result of SageWater's marketing efforts, rather than Hossfeld sourcing or initiating contact with potential customers on his own. *Id.* ¶ 17.

### C.   Hossfeld's Resignation and Misappropriation of SageWater's Confidential and Trade Secret Information

Hossfeld's last day of employment with SageWater was January 13, 2023. *See* Schanuel Dec. ¶ 23. Upon his resignation, Hossfeld was reminded of his continuing obligations under the Employment Agreement, specifically including the obligation to maintain the confidentiality of SageWater's Confidential and Trade Secret Information, to refrain from soliciting SageWater's actual and prospective customers, and to promptly deliver and return all documents in his possession relating to SageWater's business. *Id.* ¶ 24.

As more fully explained below, in May 2023, SageWater received an email that was accidentally sent to Hossfeld's old SageWater email address, attaching a draft contract between a SageWater customer and Repipe Specialists for a repiping job that Hossfeld worked on while employed by SageWater.  This triggered SageWater to conduct an investigation, including the retention of an independent computer forensic analyst to review, *inter alia*, Hossfeld's Company-issued Apple MacBook Pro ("**SageWater Mac**"). *Id.* ¶¶ 61-62. While the investigation continues, it has revealed the following to date:

- On November 18, 2022, Hossfeld accessed and downloaded two spreadsheets from SageWater's Customer Relationship Management system, a file titled "All Opportunities (Excl. Renew) 11-18- 2022 11-31-43 AM.xlsx" (the "**All Opportunities Spreadsheet**") and another titled "My Open Opportunities 11-18-2022 11-30-2025 AM.xlsx" (the "**My Opportunities Spreadsheet**") from the Company's CRM. *See* Declaration of Tim Kiefer ("**Kiefer Dec.**")(ECF No. 3-6) at ¶ 6; Lecky Dec. ¶ 31.

6

- On November 25, 2022, Hossfeld accessed and "AirDropped" four files from his Company owned SageWater Mac to his personal laptop: 1) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe Bids/Repipe Word; 2) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe Bids/Repipe Excel; 3) /OneDrive – Sagewater/Sagewater Root/Sagewater/Work Folders/Repipe Bids/Contracts; and 4)/OneDrive – Sagewater/Sagewater Root/Sagewater/Presentations and Videos, which, collectively, contained over 6000 files. *See* Kiefer Dec. ¶¶ 7-8; Lecky Dec. ¶ 39.

- On December 6, 2022, Hossfeld AirDopped another two folders from his Company owned laptop, titled 1) /Users/david/iCloud Drive (Archive)/Desktop/ActiveBids/2021; 2)/Users/david/iCloudDrive (Archive)/ Desktop/Active Bids/2022. *See* Kiefer Dec ¶ 9.

- Between December 1, 2022 and January 3, 2023, Hossfeld accessed over 250 additional SageWater files including bids, proposals, presentations, company templates, billing and correspondence. *See* Keifer Dec ¶ 11; Lecky Dec. ¶ 40.

- On January 3, 2023, Hossfeld accessed the Downloads Folder on his SageWater Mac at 13:04:27 UTC. Twenty-nine seconds later, Hossfeld connected a Lexar flash drive, Serial Number AAESZGTV3P7G6MOH ("USB") to that laptop. Hossfeld again inserted the USB approximately one hour later, at 4:03:44 UTC. *See* Keifer Dec. ¶¶ 12-14.

The All Opportunities Spreadsheet downloaded by Hossfeld is a compilation of more than ten years of work and millions of dollars spent on research and marketing efforts to identify prospective customers in need of repiping services. *See* Lecky Dec. ¶¶ 20-21. The All Opportunities Spreadsheet contains a summary *of every open or active SageWater bid* by customer name, estimated revenue, estimated close date, project addresses, information about the projects, and bid status. The information contained in this single spreadsheet represents over $1,000,000,000 in potential contracts and provides Hossfeld and Repipe Specialists with a list of over 400 projects that SageWater identified as prospective customers prime for solicitation. *Id.* ¶ 35. Similarly, the 7,500 plus AirDropped files include virtually every SageWater bid, proposal, and contract spanning more than ten years, including contract proposals and bids that were active and pending at the time of Hossfeld's resignation. *Id.* ¶ 39. Hossfeld worked exclusively from

home, so there was no legitimate business need or reason for him to AirDrop 7,500 files from his work laptop to his home laptop on the eve of his sudden resignation from SageWater. *Id.* ¶¶ 39, 42.

Additionally, SageWater learned that while Hossfeld was improperly accessing, downloading and transferring SageWater's Confidential and Trade Secret Information to himself in preparation for his Repipe Specialists employment, Hossfeld was simultaneously speaking with Dan Johnston ("Johnston"),[3] the former Vice President of Operations for SageWater who was working for – and still works for – Repipe Specialists. *See* Lecky Dec. ¶¶ 43-47. SageWater reviewed phone records from Hossfeld's SageWater-issued phone and learned that between September 1, 2022 and December 31, 2022, Hossfeld and Johnston had approximately seventy (70) phone conversations that lasted a total of over nine and a half hours (9 ½). *Id.* ¶ 43. Upon information and belief, Hossfeld and Johnston discussed intimate details concerning SageWater's current and prospective customers, including The Independent, that SageWater believes assisted Repipe Specialists in the improper interference and solicitation of that and other projects, including the Washington Projects (defined *infra*) using SageWater's confidential, proprietary and trade secret information.

At this time, the scope of Hossfeld's unlawful retention, use and disclosure of SageWater's Confidential and Trade Secret Information is not fully known. However, SageWater is patently aware that Hossfeld and Repipe Specialists are both armed with SageWater's business secrets, giving them both an unfair competitive advantage in the marketplace, which can, and will, inflict substantial, and immeasurable harm to SageWater and its goodwill.

---

[3] Dan Johnston was terminated from SageWater effective September 2, 2022 and is subject to a number of restrictive covenants, including Confidentiality, contained in his Separation Agreement and his former employment agreement with SageWater.

**D.      Repipe Specialists' Interference – The Independent Project**

As noted, SageWater became suspicious of Hossfeld's wrongdoing when the manager of a condominium known as The Independent mistakenly sent an email to Hossfeld's old SageWater email address on or about May 3, 2023, requesting additional information concerning a pending repiping project. *See* Schanuel Dec. ¶ 36. A true and correct copy of the May 3, 2023 email is attached hereto as **Exhibit 3.** On May 5, 2023, SageWater received another email to Hossfeld's SageWater email address attaching a draft repiping and construction contract between The Independent and Repipe Specialists. *Id.* ¶ 37. A true and correct copy of the May 5, 2023 email and attachment is attached hereto as **Exhibit 4.** Importantly, **Hossfeld was the sole recipient** of multiple e-mails from Mr. Turner, General Manager of The Independent, that requested integral bid documents and contained The Independent - Repipe Specialists' contract, including comments from its attorneys. The only reasonable explanation is that Hossfeld was leading the effort (or at least providing substantial assistance) in Repipe Specialists' effort to solicit The Independent project.

The Independent is a project that Hossfeld had been actively working on for SageWater at the time of his resignation, and for which he was SageWater's primary point of customer contact. *See* Schanuel Dec. ¶ 27. SageWater had spent considerable resources over an 11 month period working with The Independent and its representatives preparing and amending bids, was told by The Independent that SageWater was "locked in" as the contractor for the Project, and was engaged in detailed contract negotiations with The Independent, exchanging drafts of contract documents. *Id.* ¶¶ 27-35. Importantly, prior to Hossfeld's arrival, Repipe Specialists had deliberately chosen *not* to bid on The Independent project, even after The Independent requested it to bid. *Id.* ¶ 40; Declaration of Jeffrey Butler (ECF No. 16-4) at ¶¶ 11-12. Yet, it was only *after* Hossfeld's arrival at Repipe Specialists, equipped with intimate private details concerning The Independent project

9

and SageWater's bid, did Repipe Specialists do an about-face and choose to submit a competing bid for the project.

After a series of inquiring emails sent to the General Manager from The Independent by SageWater, on May 11, 2023, The Independent, on two separate occasions, attempted to recall the email and attached contract that was seemingly inadvertently sent to Hossfeld's SageWater email address. Schanuel Dec. ¶ 38. The contract sent by The Independent on or about May 5, 2023, was similar in substance and form to that submitted by SageWater prior to Hossfeld's resignation, with SageWater's name replaced with Repipe Specialists. *Id.* ¶ 39. The Independent project alone is valued at approximately $18 million, the loss of which has caused SageWater to suffer more than $6.3 million in lost gross margin. *Id.* ¶ 42. Repipe Specialists signed the Independent contract on June 30, 2023.[4]

### E.    The Washington and Magnolia Projects

SageWater served limited discovery in connection with this Motion. That discovery revealed additional projects or opportunities lost by SageWater as a direct result of Hossfeld and Repipe Specialists' unlawful conduct, misappropriation and interference.[5] For example, SageWater is aware of at least four (4) additional projects that it anticipated executing for which Hossfeld was SageWater's point of contact, that were subsequently awarded to Repipe Specialists after Hossfeld joined Repipe Specialists. *Id.* ¶ 43; *see* Repipe Specialists Responses and Objections to First Request for Admissions ("**Admissions Response**") (attached hereto as **Exhibit 5**; Repipe

---

[4] The June 30, 2023 date has been confirmed by counsel for Repipe Specialists.

[5] Per agreement between SageWater and Repipe Specialists, SageWater served limited discovery upon Repipe Specialists related to jobs SageWater believes it lost as a result of Defendants' tortious interference and misappropriation of SageWater's Confidential and Trade Secret Information. Responses to the discovery confirming SageWater's well-founded beliefs were received on October 10, 2023.

Specialists Answers and Objections to First Set of Interrogatories ("**Interrogatory Answers**") (attached hereto as **Exhibit 6)**).

Specifically, Hossfeld was responsible for working with the customers and submitting SageWater's bids on the Auburn Glen, Fox Run and Amberview projects, all located in the state of Washington (the "**Washington Projects**"). Schanuel Dec. ¶ 44. But for Defendants' suspected and alleged interference, SageWater anticipated closing on all three of the Washington Projects. Defendants' interference and solicitation of the Washington Projects caused SageWater a loss of over $510,000 in gross margin on the Auburn Glen project, a loss of over $500,000 in gross margin on the Fox Run project, and a loss of over $550,000 in gross margin on the Amberview project. *Id.* ¶¶ 45-46.

In addition, Hossfeld was the lead SageWater representative on SageWater's bid on Magnolia Terrace in Charlotte, North Carolina ("**Magnolia Project**"), a project SageWater expected to win. *Id.* ¶¶ 47, 48. Repipe Specialists' sworn Interrogatory Answers confirms it is doing the Magnolia Project. *See* Ex. 6. Notably, Repipe Specialists identifies 11 states in which it does business on its website. See, https://multi-family.repipe.com (last visited Oct. 11, 2023). North Carolina is not among them.

SageWater has additionally discovered that its former employee, Ken O'Neill ("**O'Neill**"), who separated from SageWater in September 2022, and executed a separation agreement containing confidentiality and non-compete covenants in exchange for a $290,000 payment, is upon information and belief, actively assisting Repipe Specialists on the Magnolia Project. Schanuel Dec. ¶ 49. A copy of the O'Neill separation agreement is attached as Exhibit 1 to the Schanuel Dec. Indeed, O'Neill formed his own company, Blackbird Restoration, LLC, a Colorado limited liability company on January 25, 2023, during his non-compete period in violation of his

SageWater severance agreement in order to actively compete with SageWater. Schanuel Dec. ¶ 50; *see* January 25, 2023 Colorado Articles of Organization for Blackbird Restoration, LLC, attached to the Schanuel Dec. as Exhibit 2. O'Neill's LinkedIn page discloses that he and Blackbird Restoration are in the business of national multi-family repipe restoration, the ***exact*** type of work he performed for SageWater for over 25 years. Schanuel Dec. ¶ 51; *see* O'Neill LinkedIn profile, https://www.linkedin.com/in/kenneth-o-neill-88521179/ (last visited October 11, 2023).

In further support of SageWater's well founded belief of O'Neill's collaboration with Repipe Specialists, and specifically with the Magnolia Project, SageWater recently received a number of emails to O'Neill's old SageWater email address confirming that O'Neill is currently renting a home for an extended period of time in Charlotte, North Carolina, less than 7.5 miles from the site of the Magnolia Project. *See* AirBnB confirmation attached to the Schanuel Dec. as Exhibit 3; Schanuel Dec. ¶ 52. This is further proof that Repipe Specialists is improperly glomming on to SageWater's former talent, who are all subject to various enforceable restrictive covenants, to unlawfully solicit SageWater's existing and prospective customers, misappropriate its trade secrets and tortiously interfere with its advantageous business relationships.

Defendants' interference and solicitation of the Magnolia project caused SageWater a loss of over $575,000 in gross margin. Schanuel Dec. ¶ 53.

F.     **The Ironbridge Project**

Waterside at Ironbridge in Chester, Virginia is another repiping project SageWater was actively working on and bidding at the time of Hossfeld's departure from SageWater in January 2023 ("**Ironbridge Project**"). *Id.* ¶ 54. Like the other projects listed above, Hossfeld was SageWater's lead contact and salesman on the Ironbridge Project. *Id.* ¶ 55. SageWater fully expected to be awarded the Ironbridge Project, having performed work for the corporate owner of Waterside at Ironbridge on a number of prior occasions. *Id.* ¶ 56.

Repipe Specialists, on the other hand, has never performed multi-family repiping services in the state of Virginia. *Id.* ¶ 57; Admissions Response, ¶ 5. Again, Repipe Specialists' website does not even include Virginia as a state in which it provides services. *Id.; see* https://repipe.com and https://multi-family.repipe.com (last visited Oct. 11, 2023). Repipe has now admitted to having bid the Ironbridge Project, after Hossfeld began his employment with Repipe Specialists, despite having never performed work in Virginia.[6] Admission Response, ¶ 4.

In sum, Repipe Specialists has confirmed that it has signed contracts for ten multi-family construction projects since January 17, 2023 (Hossfeld's start date with Repipe Specialists). Five of those projects, **a full 50%** of its total contracts since January 17, 2023, were active SageWater proposals or bids for which **Hossfeld was SageWater's lead salesmen.** It is not mere coincidence that for **each and every project that SageWater lost to Repipe, Hossfeld was SageWater's Project representative.** With every passing day, Hossfeld and Repipe Specialists' retention and use of SageWater's Confidential and Trade Secret Information, improper solicitation, and tortious interference is causing significant present and future harm to SageWater.

### G.   Cease and Desist Letters

In an attempt to resolve the dispute amicably and prior to the Court's intervention, on May 12, 2023, SageWater sent a letter to both Hossfeld and Repipe Specialists informing both of Hossfeld's violation of the restrictive covenants and applicable federal and state law. *See* Schanuel Dec. ¶¶ 63-64. While Repipe Specialists acknowledged receipt of the letter and indicated a willingness to cooperate with SageWater's investigation, incredibly, Repipe Specialists went

---

[6] SageWater has been informed by the project manager at Ironbridge that it has awarded the Ironbridge Project to another contractor. Schanuel Dec ¶ 56. While Repipe Specialists' Interrogatory Answers do not list the Ironbridge Project among its signed contracts, further discovery will reveal whether Repipe Specialists bid been accepted, or whether it entered the contract through a proxy such as O'Neill's company, Blackbird Restorations.

forward using SageWater's misappropriated confidential, proprietary and trade secret information to execute its tainted contract with The Independent on June 30, 2023 – after the motion for preliminary injunction containing evidence of Hossfeld's theft had been filed, but before the hearing and entry of the current injunction. Thereafter, Repipe Specialists continued to improperly rely upon Hossfeld and his ill-gotten information to sign contracts for the Washington Projects, the Magnolia Project, and has now, apparently, bid the Ironside Project.[7] *Id.* ¶ 43.

## IV.     MEMORANDUM OF LAW

### A.     STANDARD FOR PRELIMINARY INJUNCTIONS

The party seeking a preliminary injunction under Rule 65 must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered absent an injunction; (3) that the injury to movant outweighs the injury the proposed injunction would cause the opposing party; and (4) that the proposed injunction would serve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Courts routinely issue preliminary injunctions to mitigate the misappropriation of trade secrets. *See Bowe Bell & Howell Co. v. Harris*, 145 F. App'x 401 (4th Cir. 2005).

### B.     SAGEWATER HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Where multiple causes of action are alleged, a plaintiff need only show a likelihood of success on one claim to justify injunctive relief. *See Audio-Video Grp., LLC v. Green*, No. 1:14cv169 (JCC/TCB), 2014 WL 793535 at *2 (E.D. Va. Feb. 26, 2014); *see also Nabisco Brands,*

---

[7] Aside from the notice provided in the cease and desist letter, counsel for SageWater provided Repipe Specialists a copy of the Complaint **and** Motion for Preliminary Injunction filed against Hossfeld for the exact behavior alleged above, including the improper solicitation of The Independent, well before the execution of The Independent contract.

*Inc. v. Conusa Corp*, 982 F. 2d 74 (4ᵗʰ Cir. 1989) (a showing of entitlement to preliminary injunctive relief with respect to any claim obviates the necessity to consider any other). The Court already determined that SageWater demonstrated a substantial likelihood of success on the merits against Hossfeld's misappropriation of trade secrets. SageWater now seeks, and is entitled to, extend the injunctive relief to Repipe Specialists' use of SageWater's Trade Secret Information (Counts I and II), and Repipe Specialists' tortious interference with SageWater's contract expectancy (Count VI).

The likelihood of success inquiry requires a plaintiff to make a "clear showing" that it is likely to succeed at trial, but a plaintiff need not show a certainty of success. *See Pashby*, 709 F.3d at 321. As demonstrated below, SageWater easily satisfies this requirement for Counts I, II and VI of the Amended Complaint.

> **1.    SageWater has a Substantial Likelihood of Success on the Merits of Counts I and II for Misappropriation of Trade Secrets**

To succeed on both the Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"), and the Virginia Uniform Trade Secrets Act, (the "VUTSA"; Va. Stat. § 59.1-336, *et seq*.), SageWater must show (1) the existence of a trade secret, and (2) the misappropriation of that trade secret by Defendant, and, in the case of the DTSA (3) that the trade secret implicates interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1); Va. Code. § 59.1-336; *see also Space Systems/Loral, LLC v. Orbital ATK, Inc.,* 306 F. Supp. 3d 845, 855 (E.D. Va. 2018). Given the facts set forth above, there is a substantial likelihood that SageWater will prevail on its claims for trade secret misappropriation against Repipe Specialists under both its federal and state law claims.

As a preliminary matter, in granting the initial injunction, this Court already determined that (a) the information Hossfeld viewed, downloaded and transferred to himself prior to his resignation and subsequent employment with Repipe Specialists include SageWater's trade secrets

(the "Downloads"), (ii) implicates interstate or foreign commerce, and (iii) that Hossfeld misappropriated SageWater's trade secrets. Thus, the only issue is whether Repipe Specialists also misappropriated SageWater's trade secrets.

The Court's preliminary finding that Hossfeld misappropriated SageWater's trade secrets applies with equal force to Repipe Specialists, given the simple fact that Hossfeld was Repipe Specialists' employee at the time he used and accessed SageWater's trade secrets to solicit business for Repipe Specialists. In *Newport News Industrial v. Dynamic Testing*, 130 F. Supp. 2d 745 (E.D. Va. 2001), the Court explained that an "Employer corporation could be found vicariously liable, under Virginia Uniform Trade Secrets Act (VUTSA), for misappropriation by new employee of trade secrets acquired while working for former employe[r]." The court held that the doctrine of respondeat superior applies to common law torts and federal statutory violations. *See Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 330 F. Supp. 2d 668, 676 (E.D. Va. 2004) ("[a]n employer can be held vicariously liable for trade secret misappropriation committed by an employee acting within the scope of his employment.")

Misappropriation is defined as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [ ] disclosure or use of a trade secret of another without express or implied consent." *Space Systems/Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 854 (E.D. Va. 2018). The Court further explained that the

> disclosure or use category requires that the discloser or user (i) used improper means to acquire knowledge of the trade secret, (ii) knew or had reason to know that the knowledge of the trade secret was … derived from or through a person who had used improper means to acquire the trade secret, and was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret … or (iii) knew or had reason to know that the trade secret was a trade secret, and was acquired by accident or mistake.

16

*Id.* (internal citations omitted). *see also Newport News Industrial,* 130 F. Supp. 2d at 751 (E.D. Va. 2001) ("While the definition of 'misappropriation' requires some type of misconduct or bad faith on the part of the misappropriator, nothing in the statute precludes liability for the employer due to the misconduct or bad faith of his employee conducted for the employer's benefit.").

In addition to its vicarious liability for the actions of Hossfeld, Repipe Specialists' direct conduct squarely fits within the definition of misappropriation. First, Repipe Specialists was fully aware of Hossfeld's restrictive covenants, and the improper Downloads, because SageWater told it so in the cease and desist letter. Second, while Hossfeld was still employed by SageWater, but preparing for his Repipe Specialists employment, he was having extensive communications with Johnston, a former SageWater high-ranking employee, who, at the time of those conversations, was a Repipe Specialists employee. *See* Lecky Dec. ¶ 43. Upon information and belief, Repipe Specialists was aware that Johnston was subject to restrictive covenants stemming from his previous SageWater employment, and that Hossfeld and Johnston were discussing intimate details concerning SageWater's current and prospective customers, including The Independent. Third, the fact that Repipe Specialists did not, at least according to its website, do business in North Carolina or Virginia, but suddenly is bidding on SageWater projects in those states – projects for which Hossfeld was the SageWater lead – further supports the inference that Repipe Specialists, either directly or through Hossfeld, was using SageWater's trade secrets for its benefit.

The most direct evidence of Repipe Specialists use of SageWater's trade secrets is The Independent project. As discussed above and the Court's initial injunction, it is clear that Hossfeld improperly solicited the Independent, using SageWater's trade secret information. By way of reminder, the Independent project chronology is below:

17

(i) Landon Turner, the General Manager of The Independent, who had previously emailed SageWater to advise it was "locked in" for the project, reached out to Hossfeld via LinkedIn on February 17, 2023, inquiring, "David did you leave SageWater? Give me a shout if you get the chance." (Hossfeld Dec., ECF 16-1, ¶ 28, and Ex. 1 thereto).

(ii) Hossfeld than called Mr. Turner, *after* which Mr. Turner sent Hossfeld an e-mail at his Repipe Specialists email address requesting that Hossfeld provide the *"**project details**"* to the president of his new employer and inquiring whether Repipe Specialists would be interested in the project. (Hossfeld Dec. ¶¶ 33-34, and Ex. 2 thereto).

(iii) Hossfeld did as requested, and spoke with the President of Repipe Specialists, Mr. Butler, apparently providing sufficient detail so that Repipe Specialists, ***which had declined to bid on this very project one year earlier***, was now suddenly interested in pursuing the bid. *(Id.,* Butler Dec., ECF 16-4, ¶¶ 11-12).

(iv) Despite being on actual notice of Hossfeld's wrongdoing via the Repipe Specialists Cease and Desist and Letter, the Complaint and the Motion for Preliminary Injunction against Hossfeld, and with the hearing on the motion for preliminary injunction against Hossfeld scheduled, Repipe Specialists still chose to execute and proceed with its contract for The Independent project.

It is also beyond dispute that Repipe Specialists was fully aware of Hossfeld's use of SageWater's trade secrets at the time it signed the contract for the Independent project on June 30, 2023. In addition to delivery of the cease and desist letter on May 12, 2023 which included substantial evidence of Hossfeld's misappropriation, SageWater provided Repipe Specialists with courtesy copies of the Complaint (ECF No. 1) and SageWater's Motion for Preliminary Injunction and Memorandum of Law in support thereof (ECF Nos. 2-3). Notwithstanding, Repipe Specialists made the conscious decision to sign The Independent contract shortly before the hearing on the preliminary injunction.[8]

---

[8] Further evidence of Repipe Specialists' misappropriation is the fact that while Hossfeld was employed at SageWater, it took SageWater in excess of eleven months to submit an initial bid to The Independent, but now that Repipe Specialists was equipped with SageWater's sensitive information, Repipe Specialists submitted its competing bid, with Hossfeld's improper assistance in under four months and signed a contract with The Independent within six months of Hossfeld's employment.

Thereafter, Repipe Specialists continued to raid SageWater projects, as evidenced by its contracts for the Washington Projects, the Magnolia Project (even though its website does not indicate any prior muti-family work in North Carolina), and by its bid on the Ironbridge Project, despite the fact that it had never done a multi-family project in Virginia.

The point is driven home by the unassailable fact that **50%** of all muti-family contracts that Repipe Specialists signed since Hossfeld joined were prior SageWater projects. All **100%** of those overlapping projects were led by Hossfeld as SageWater's project lead.[9] *See* Repipe Specialists' Interrogatory Answers and Admissions Response. At this stage, the Court is permitted to make reasonable inferences from the evidence presented. *See Allied Prop. and Casualty Ins. Co. v. Zenith Aviation, Inc.*, 2019 WL 10960569, *2 (E.D. Va. July 2, 2019) (when making findings of fact based upon the evidence presented, the court determines the weight to be given to each piece of evidence and the reasonable inference to be drawn from the evidence); *McNamara v. Virginia Employment Commission*, 54 Va. App. 616 (Ct. App. 2009) ("a fact finder[,] is entitled to draw reasonable inferences from the evidence.").

Taken together, the evidence revealed herein clearly demonstrates Repipe Specialists improperly used or threatens to improperly use and misappropriate SageWater's Confidential and Trade Secret Information, and SageWater is likely to succeed on the merits of both Count I and Count II of the Amended Complaint against Repipe Specialists.

---

[9] Moreover, at least on one of these projects – the Magnolia Project – SageWater suspects Repipe Specialists is also using a former SageWater executive, O'Neill and his company, to perform critical repipe restoration subcontracting work in breach of the restrictive covenants contained in O'Neill's separation agreement with SageWater.

## 2. SageWater has a Substantial Likelihood of Success on the Merits of Counts VI for Tortious Interference with Business Expectancy

Count VI alleges that Repipe Specialists tortiously interfered with SageWater's business expectancy. To succeed on this claim, SageWater must establish: 1) the existence of a contract expectancy, 2) the defendant knew of the expectancy, 3) the defendant intentionally interfered with the expectancy, 4) the defendant used improper means to interfere with the expectancy, and 5) the plaintiff suffered a loss as a result of defendant's disruption of the contract expectancy. *See Stultz v. Va. Dep't of Motor Vehicles*, 185 F. Supp. 3d 890, 903 (W.D. Va. 2015). Courts have determined that improper means include violations of statutes, regulations, or common-law rules, fraud, misrepresentation and misuse of inside or confidential information. *See Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987).

There is a substantial likelihood that SageWater will prevail on the merits of its claim for tortious interference with business expectancy against Repipe Specialists. A simple review of The Independent project alone demonstrates SageWater's entitlement to relief. First, as explained in the proceeding sections, in January 2023, The Independent informed SageWater that it was "locked in" as the contractor for the project. Subsequent to the email confirmation, SageWater and The Independent negotiated specific details and exchanged draft contracts. Courts have determined that contract expectancy pertains to contracts that are expected to "come into force in the future." *T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004). At a minimum, SageWater has demonstrated that it reasonably expected to be awarded The Independent project, and therefore, had a legitimate contract expectancy that was ultimately interfered with by Repipe Specialists.

SageWater has further established that Repipe Specialists knew of the contract expectancy. First, Hossfeld had intimate knowledge of SageWater's status of the bidding process with The

Independent, which can be imputed to his employer. Second, based upon Mr. Turner's e-mail asking Hossfeld to provide the "project details" to Repipe Specialists, coupled with Repipe Specialists decision to then bid on a project that it expressly rejected in the past, the Court can infer that Hossfeld relayed confidential information regarding SageWater's bid to Repipe Specialists. Third, SageWater expressly informed Repipe Specialists of the contract expectancy on May 12, 2023 in the cease and desist letter. Repipe Specialists consciously decided to proceed despite this notice. Thus, SageWater is likely to succeed on this element.

Taking the third and fourth elements together, SageWater has demonstrated that Repipe Specialists intentionally interfered with the expectancy and did so by employing improper means on at least The Independent project and likely others. Liability attaches "where an interferor acts with the purpose of, or a partial desire to, interfere with the performance of another's contract . . . [or] if the interferor knows that the interference is certain or substantially certain to occur as a result of his or her actions." *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 212-213 (4th Cir. 2001) (internal citations omitted). Further, allegations of a competitive relationship and direct contact between the alleged interferor and the source of the business "provide prima facie evidence of a motive to interfere and indicate that the interference actually took place." *17th St. Assocs., LLP v. Markel Int'l. Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005).

Lastly, SageWater can establish damages as a direct result of Repipe Specialists' interference. Specifically, SageWater suffered a loss in excess of $6 million in gross profit margin on The Independent project, and another $1.5 million on the Washington Projects that SageWater contends were lost as a result of Defendants' tortious interference. SageWater expended significant time and resources in identifying, sourcing, targeting and marketing The Independent and the

Washington Projects, resulting in contract expectancy.  Moreover, SageWater has suffered and continues to suffer uncertain and incalculable damages to its goodwill from Hossfeld and Repipe Specialists' use of its Confidential and Trade Secret Information, specifically including information on all of SageWater's open and active bids.

With just The Independent project itself, SageWater has presented sufficient compelling evidence to support each element of its tortious interference with business expectancy claim and is likely to succeed on the merits of Count VI of the Amended Complaint.

### C.   SAGEWATER NEED NOT PROVE IRREPARABLE HARM FOR COUNTS I AND II, THE TRADE SECRET COUNTS

Section 59.1-337, Va. Code and 18 U.S.C. 1836, provides for preliminary injunctive relief to enjoin actual or threatened misappropriation. As explained by the Virginia Supreme Court, "[w]hen a statute empowers a court to grant injunctive relief, the party seeking an injunction is not required to establish the traditional prerequisites, *i.e.,* irreparable harm and lack of an adequate remedy at law, before the injunction can issue. All that is required is proof that the statute or regulation has been violated." *Virginia Beach S.P.C.A., Inc. v. South Hampton Roads Veterinary Ass'n*, 229 Va. 349, 354 (1985). Similarly, the Fourth Circuit held in *Environmental Defense Fund, Inc. v. Lamphier*, 714 F. 2d 331, 338 (4th Cir. 1983) that  "[w]hen a statute authorizes injunctive relief for its enforcement, plaintiffs need not plead and prove irreparable injury" (holding that 42 U.S.C. § 6928 calls for the issuance of injunctions to coerce compliance with the Act's requirements, therefore,  pleading and proving irreparable injury is unnecessary). Because Plaintiff established that Repipe Specialists violated the VUTSA and DTSA, SageWater is not required to establish irreparable harm.

## D.      SAGEWATER WILL SUFFER IRREPARABLE INJURY ABSENT A PRELIMINARY INJUNCTION

Even absent the statutory presumption, the Court has already determined that as a result of Hossfeld's misappropriation of SageWater's Confidential and Trade Secret Information, SageWater will suffer irreparable injury absent a preliminary injunction. The reasons apply with equal force to Repipe Specialists.

Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Integrated Global Services, Inc. v. Mayo*, No.: 3:17cv563, 2017 WL 4052809, *8 (E.D. Va. Sept. 13, 2017). Courts have determined that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Audio-Video*, 2014 WL 793535, *5.

As demonstrated above, Repipe Specialists' brazen conduct has already resulted in the loss of The Independent project, the loss of the Washington Projects and the Magnolia Project, and likely the Ironbridge Project. Repipe Specialists' continued access, directly or through its employee Hossfeld, of SageWater's Confidential and Trade Secret Information creates the risk of a permanent loss of customers.

This evidence is sufficient to warrant injunctive relief. In *Integrated*, *supra*, the court held that "the evidence of [former employee's] employment with a direct competitor, combined with the evidence that [former employee] 'accessed, copied[,] and deleted [employer's] confidential, proprietary[,] and trade secret information while seeking employment with a competitor of [employer] satisfies the requisite showing of actual and imminent harm given the 'possibility of permanent loss of customers to a competitor." *Integrated*, 2017 WL 4052809, *9.

Additionally, courts have very clearly held that the "disclosure of trade secrets establishes immediate irreparable harm because a trade secret, once lost is, of course, lost forever." *Home*

*Funding Grp., LLC v. Myers*, No.: 1:06cv1400 (JCC), 2006 WL 6847953, *2 (E.D. Va. Dec. 14, 2006) (internal citations and quotations omitted) (court granted plaintiff's motion for injunctive relief because defendant breached her employment agreement by soliciting existing and potential clients away from former employer, and any further disclosure would result in irreparable harm).

Here, the facts presented by SageWater go a step beyond that presented in *Integrated* and *Home Funding*, and demonstrate that as a result of Repipe Specialists' unlawful use of SageWater's Confidential and Trade Secret Information and its tortious interference with SageWater's contract expectancy, SageWater has already lost customers and millions of dollars in revenue. As such, SageWater has already suffered, and will continue to suffer, irreparable harm unless the Court grants SageWater's requested relief.

While SageWater can likely quantify damages stemming from the loss of The Independent, the Washington Projects, the Magnolia Project, and possibly others, there is no adequate remedy at law to address the continuing damage to SageWater's business and goodwill from Repipe Specialists' use of SageWater's Confidential and Trade Secret Information. *See Hilton Worldwide, Inc. v. Glob. Advert., Inc.,* No.: 1:15cv1001, 2016 WL 8223436, *8 (E.D. Va. Apr. 8, 2018) (loss of a trade secret represents irreparable harm, and defendant's lack of response to a cease and desist letter shows a threat of continued infringement and suggests that defendant will not cooperate in a future suit for money damages). For example, it would be impossible for SageWater to ascertain and quantify the unfair trade advantage that Repipe Specialists has gained as a result of its direct and indirect use and retention of SageWater's entire confidential customer database, marketing strategy, bidding and estimation procedures, pricing structure, expected revenue and confidential customer information. SageWater has already lost five jobs to Repipe Specialists as a result of

24

Hossfeld and its unlawful conduct. Unless restrained, Repipe Specialists will continue to have an unfair competitive advantage in the marketplace which will irreparably damage SageWater.

The above facts demonstrate that SageWater has met its burden to demonstrate irreparable injury.

### E.    THE INJURY SAGEWATER WILL SUFFER OUTWEIGHS THE HARM TO REPIPE SPECIALISTS

Balancing the potential harm to SageWater and Repipe Specialists, SageWater's injuries far outweigh any potential harm to Repipe Specialists. SageWater does not seek to prohibit Repipe Specialists from **properly** competing with SageWater.  Rather, SageWater simply seeks to restrain Repipe Specialists from using and misappropriating SageWater's Confidential and Trade Secret Information that was improperly retained by Hossfeld prior to his Repipe Specialists employment. The Court in *Home Funding* held that the defendant employer will continue its services as it had prior to the employee joining the organization "and will only stand to lose benefits unjustly gained." *Home Funding*, 2006 WL 6847953, *2; *see also Hilton*, 2016 WL 8223436 at *9 (court held that the only hardship faced by defendant would be an obligation to follow VUTSA, thus, the balance of hardship weighs in plaintiff's favor).

Hossfeld's employment with Repipe Specialists, coupled with his premediated plan to unlawfully access and copy SageWater's Confidential and Trade Secret Information in preparation for his employment with SageWater's competitor, and Repipe Specialists' use of that information to compete against SageWater has, and will continue to, cause SageWater irreparable injury to its business and goodwill. In comparison, Repipe Specialists has little risk of sustaining any harm as a result of an injunction. The injunction merely seeks to prohibit Repipe Specialists from unfairly benefiting from information that was improperly misappropriated and used by a former employee for the benefit of his new employer. An injunction that simply prohibits Repipe Specialists from

engaging in any continued illegal or unethical activity, is simply not a burden. *See Home Funding*, 2006 WL 6847953, \*2; *see also Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 698 F. Supp. 2d 602, 624 (E.D. Va. 2010) ("Granting the injunction will not harm Defendant because it merely forced [Defendant] to abide by its own contractual obligations.").

Therefore, the balance of equities weighs in favor of granting Plaintiff's requested relief and enjoining Repipe Specialists from causing further harm.

## F.    THE GRANTING OF A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

Under Virginia law, "public interest favors the protection of confidential business information and the enforcement of valid contracts." *Audio-Video*, 2014 WL 793535 at \*6. Injunctive relief will not prohibit Repipe Specialists from continuing Hossfeld's employment or competing with SageWater; rather, it bars Repipe Specialists from misappropriating and using SageWater's Confidential and Trade Secret Information that it improperly obtained in the first place. The enforcement of such restrictions serves the public interest by allowing companies to protect their trade secret and confidential information, and by providing injured parties with a forum to seek temporary relief to enjoin a further breach or disclosure that can cause irreparable harm. *See MicroStrategy*, 369 F. Supp. 2d 725, 736 (E.D. Va. 2005) ("The court finds that there is certainly a significant public interest in maintaining the confidentiality of trade secrets and preventing their misappropriation."). In doing so, "public interest is not violated by injunctive relief, but instead it is served." *Home Funding*, 2006 WL 6847953, \*3.

Thus, compelling Repipe Specialists to abstain from using SageWater's Confidential and Trade Secret Information and from tortiously interfering with SageWater's contract expectancies serves the public interest.

## <u>CONCLUSION</u>

Based upon the foregoing, SageWater respectfully requests the Court enter an order granting the following relief:

i.      Preliminarily and permanently enjoin Repipe Specialists and anyone working in concert with it from disclosing or using SageWater's Confidential and Trade Secret information on its own behalf, or for the benefit of any entity or joint venture, other than SageWater, for as long as that information remains confidential and proprietary to SageWater;

ii.     Preliminarily and permanently enjoin Repipe Specialists and require it to maintain the confidentiality of SageWater's Confidential and Trade Secret Information that it obtained as private, privileged, and proprietary to SageWater, and to return, destroy or delete any and all such information in its possession, custody or control;

iii.    Preliminarily and permanently enjoin Repipe Specialists and anyone working in concert with it from directly or indirectly tortiously interfering with SageWater's contract expectancies as identified on the All Opportunities Spreadsheet, unless Repipe Specialists can affirmatively establish contact (other than a mass mailing) with the project owner prior to January 13, 2023, for a period of eighteen (18) months from the date of such order; and

iv.     Award SageWater such other and further relief that this Court deems just and proper.

Respectfully submitted, October 13, 2023.

**AKERMAN LLP**
750 Ninth Street, N.W.
Suite 750
Washington, D.C. 20001
Telephone: (202) 393-6222
Facsimile:  (202) 393-5959


By: <u>/s/ *J. Travers Clark*           </u>

J. Travers Clark, Esq.
Virginia Bar Number: 94706
Email: trav.clark@akerman.com

**OF COUNSEL:**

**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301-2229
Telephone: (954) 463-2700
Facsimile:  (954) 463-2224
Andrew P. Gold, Esq.
Florida Bar No. 612367
Primary email: andrew.gold@akerman.com
Secondary email: jill.parnes@akerman.com
Jason S. Oletsky, Esq.
Florida Bar No. 9301
Primary email: jason.oletsky@akerman.com
Secondary email: jill. parnes @akerman.com
Scott J, Miller, Esq.
Florida Bar No. 1001148
Primary email: scott.miller@akerman.com
Secondary email: charlene.cerda@akerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Roya Vasseghi
Vasseghi Budd PLLC
9663 Main Street Suite A
Fairfax, VA 22031
703-215-9358
roya@vasseghibuddlaw.com

Amy Epstein Gluck
FisherBroyles, LLP
1200 G Street, NW, Suite 800
Washington, D.C. 20005
301-526-1184
Amy.epsteingluck@fisherbroyles.com

Christopher J. Esbrook
Stephen R. Brown
Esbrook P.C.
321 N. Clark Street, Suite 1930
Chicago, Illinois 60654
312-319-7680
Christopher.esbrook@esbrook.com
Stephen.brown@esbrook.com

/s *J. Travers Clark*
J. Travers Clark