**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| SAGEWATER, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:23-cv-0770 (MSN/LRV) |
| | ) |
| DAVID HOSSFELD, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff SageWater, LLC's ("SageWater") Motion for Leave to Amend the Complaint (Dkt. No. 215), requesting leave to file a fourth amended complaint that adds three new defendants and four new causes of action. Defendants oppose Plaintiff's Motion (*see* Dkt. No. 227), asserting that the Motion should be denied because Plaintiff has failed to establish good cause to under Federal Rule of Civil Procedure 16 and because the proposed amendments would be prejudicial, are unduly delayed and thus brought in bad faith, and/or would be futile. Plaintiff's Motion is fully briefed and ripe for adjudication.[1] (*See* Dkt. Nos. 215, 216, 227, 228.) For the following reasons, the undersigned recommends that Plaintiff's Motion be **DENIED**.[2]

---

[1] Plaintiff filed several pleadings and exhibits related to this Motion under seal. For ease of reference, the undersigned cites to the public version of the filings as much as possible.

[2] The undersigned has heard numerous discovery related disputes in the matter and decided Plaintiff's prior Motion to Amend. (*See* Dkt. Nos. 142, 167.) Accordingly, armed with ample knowledge about the facts and scope of this matter and considering the voluminous briefing related to Plaintiff's pending motion, the undersigned finds that a hearing would not aid in the decisional process and dispenses with oral argument. *See* L. Civ. R. 7(J).

## I.    Background and Overview of Plaintiff's Proposed Amendments

Plaintiff filed the initial complaint on June 13, 2023.  (Dkt. No. 1.)  That complaint named only David Hossfeld as a defendant and alleged five counts for the following: misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA") and Virginia's trade secret statute ("VUTSA"), breach of contract for violating the confidentiality and non-solicitation provisions of his Employment Agreement with Plaintiff, and tortious interference with contract expectancy in relation to The Independent Project.  As set forth in the initial complaint, Defendant Hossfeld was an employee of Plaintiff SageWater from March 1997 until his resignation on January 13, 2023.  (Dkt. No. 1 ¶¶ 2, 27–30.)  Upon his resignation, Mr. Hossfeld "began working for National Renovations, LLC d/b/a Repipe Specialists ("Repipe Specialists"), a direct competitor of SageWater, as its Vice President of Multi-Family."  (*Id.* at ¶ 2.)

The original complaint further alleged that, from November 2022 until early January 2023, Defendant Hossfeld accessed and downloaded thousands of Plaintiff's files from his Plaintiff-issued laptop that contained confidential and proprietary bids, proposals, and customer information relating to numerous SageWater projects and potential projects, and then transferred them to a personal device.  (*See, e.g.*, *id.* ¶¶ 3–6.)  The alleged unauthorized downloads included Plaintiff's "All Opportunities" spreadsheet, which contained Plaintiff's "historic and current potential book of business including data on nearly 2,500 actual or potential SageWater projects."  (*Id.* ¶ 4.)  Defendant Hossfeld allegedly downloaded the All Opportunities spreadsheet on November 18, 2022—two months before his resignation.  (*Id.* ¶ 45.)  Plaintiff's initial complaint further alleged that Defendant Hossfeld commenced employment with Repipe Specialists, SageWater's direct competitor, "immediately" after his last day with SageWater (*id.* ¶¶ 56–57), and that Mr. Hossfeld was utilizing the material he downloaded from SageWater "for the benefit of his new employer,

Repipe Specialists, to unfairly compete with his prior employer, SageWater." (*Id.* ¶ 9; *see also id.* ¶¶ 94, 101, 112, 127.)  On the same day that Plaintiff filed the complaint, it moved for a Preliminary Injunction against Defendant Hossfeld, which the Court granted.  (Dkt. Nos. 2, 24.)

On September 14, 2023, Plaintiff filed its first motion for leave to amend the complaint, which the Court granted on September 18, 2023.  (Dkt. Nos. 37, 39.)  The Amended Complaint added Repipe Specialists as a defendant and alleged a total of seven counts against Hossfeld and Repipe Specialists: misappropriation of trade secrets against Hossfeld and Repipe Specialists under the DTSA (Count I) and VUTSA (Count II), two breach of contract claims against Hossfeld related to his Employment Agreement (Counts III and IV), tortious interference with contract expectancy related to The Independent Project against Hossfeld (Count V) and against Repipe Specialists (Count VI), and tortious interference with contract related to The Independent Project against Repipe Specialists (Count VII).  (Dkt. No. 40.)  On October 13, 2023, Plaintiff filed a Motion for a Preliminary Injunction against Repipe Specialists, which the Court granted on November 15, 2023.  (Dkt. No. 59, 95.)

On November 10, 2023, Defendant Repipe Specialists filed a motion to dismiss the counts against it in the Amended Complaint.  (Dkt. No. 85.)  On November 24, 2023, Plaintiff filed a motion again seeking leave to amend its complaint.  (Dkt No. 100.)  Plaintiff's motion sought leave to file a second amended complaint that added new factual allegations concerning additional projects (beyond The Independent Project) that Plaintiff allegedly lost to Defendant Repipe Specialists but did not seek to add any new counts or defendants.  (*See* Dkt. No. 101 at 2.)  With the consent of the parties, the Court allowed Plaintiff to file the Second Amended Complaint.  (Dkt. No. 105.)  The Second Amended Complaint included new allegations about additional projects for

which Repipe Specialists allegedly submitted bids using Plaintiff's purported confidential and/or trade secret information.  (Dkt. 106.)

On December 8, 2023, Defendants Hossfeld and Repipe Specialists filed motions to dismiss the second amended complaint.  (Dkt. Nos. 107, 110.)  On January 25, 2024, the Court granted the motions in part, dismissing with prejudice the claims for breach of the confidentiality and non-solicitation provisions alleged against Hossfeld (Counts III and IV), the tortious interference with contract alleged against Repipe Specialists (Count VII), and the breach of contract expectancy claims against Hossfeld and Repipe Specialists with respect to all alleged business expectancies except for The Independent Project (Counts V and VI).  (Dkt. No. 120.) The same day (January 25), the Court issued a Scheduling Order that opened discovery in this matter.  (Dkt. No. 121.)  The Scheduling Order set the discovery deadline as June 14, 2024, and set a final pretrial conference for June 20, 2024.[3]

On March 15, 2024, Plaintiff filed a motion for leave to file a third amended complaint, which Defendants ultimately did not oppose.  (Dkt. Nos. 142, 160).  On April 1, the Court granted Plaintiff's motion.  (Dkt. No. 167.)  The Third Amended Complaint (Dkt. No. 170)—which is the operative complaint—added two counts, both against Defendants Hossfeld and Repipe Specialists collectively: (1) common law breach of fiduciary duty of loyalty, and (2) conversion.  Thus,, Plaintiff's current claims as alleged in the Third Amended Complaint, filed on April 1, 2024 (ten months after this case was filed, and just over two months prior to the close of discovery), are as follows: In Count I, Plaintiff brings a misappropriation of trade secrets claim under the DTSA against both Repipe Specialists and Hossfeld.  In Count II, Plaintiff asserts misappropriation of trade secrets under the VUTSA against both Repipe Specialists and Hossfeld.  In Counts III and

---

[3] The final pretrial conference has since been rescheduled to July 9, 2024.

IV, Plaintiff asserts claims for tortious interference with contract expectancy pertaining to The Independent Project—one against Hossfeld (Count III) and another against Repipe Specialists (Count IV). Finally, Plaintiff asserts one count for common law breach of the fiduciary duty of loyalty against Hossfeld and Repipe Specialists (Count V), and one count for conversion claim against Hossfeld and Repipe Specialists (Count VI).

On May 22, 2024, approximately nine weeks after seeking leave to file the Third Amended Complaint and just three weeks prior to the close of discovery in this matter, Plaintiff filed the instant Motion requesting leave to file a *fourth* amended complaint. (Dkt. No. 215.) Plaintiff's proposed fourth amended complaint (Dkt. No. 215-1) seeks to add three new individual defendants and four new counts to the action. Specifically, Plaintiff seeks to name as new defendants:

- **Daniel Johnston.** Until on or about July 20, 2022, Mr. Johnston was employed by Plaintiff as Senior Vice President of Operations. (Dkt. No. 216-1 ¶ 262; *see also id.* ¶ 2 & n.2 (stating Johnson was terminated from Plaintiff's employment "effective September 2, 2022").) Mr. Johnston is currently an employee of Defendant Repipe Specialists, working as part of the Multi-Family Sales Team. (Dkt. No. 170 ¶ 75–80; *see also* Dkt. No. 216-1 ¶ 7.)

- **Kenneth O'Neill.** Mr. O'Neill formerly served as Plaintiff's Director of Operations. (Dkt. No. 216-1 ¶ 2.) Plaintiff terminated Mr. O'Neill on or about July 20, 2022. (*Id.* ¶¶ 274–75.) At some point after his termination by Plaintiff, O'Neill created his own contracting company and works with Defendant Repipe Specialists as a subcontractor. (Dkt. No. 145 at 12.) In March 2024, Plaintiff stated in a filing that Repipe Specialists' initial document production had "revealed" that O'Neill served as an independent contractor for Defendant Repipe Specialists on the Magnolia Terrace Project. (*Id.*)

- **Jeffrey Butler.** Mr. Butler currently serves as General Manager of Multi-Family for Repipe Specialists. (Dkt. No. 216-1 ¶ 2.) He founded the entity now known as Defendant Repipe Specialists and served as President of Repipe Specialists from 1991 until February 2023. Mr. Butler is Vice Chairman of the Board for Repipe Specialists. (*Id.* ¶ 2; Dkt. No. 16-4 ¶¶ 4–6.)

In terms of new claims, Plaintiff's proposed fourth amended complaint asserts the following: one count for breach of contract against Johnston for allegedly violating the Separation Agreement he entered into with Plaintiff in connection with his termination; one count for breach

of contract against O'Neill for allegedly violating the Separation Agreement he entered into with Plaintiff in connection with his termination; and two counts for common law conspiracy and statutory business conspiracy under Virginia law against current Defendants Hossfeld and Repipe Specialists, as well as against new proposed defendants Johnston, Butler, and O'Neill, collectively.

On May 29, 2024, Defendants Hossfeld and Repipe Specialists filed an Opposition to Plaintiff's Motion (Dkt. No. 227), and on May 30, Plaintiff filed a reply brief (Dkt. No. 228). As stated, discovery in this matter closed on June 14, 2024, except for a limited extension until June 28, 2024, to complete certain depositions. The final pretrial conference will be held on July 9, 2024.

## II.   Legal Standard

### A.  Federal Rule of Civil Procedure 15

A party may timely amend its pleading once as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). In all other cases, a party must obtain the opposing party's written consent or the court's leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Rule 15 directs that the "court should freely give leave when justice so requires." *Id.* This liberal standard evinces "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). However, "leave to amend is not to be granted automatically" and the "[d]isposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). The Fourth Circuit has instructed that leave to amend may be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426–27; *see also Deasy*, 833 F.2d at 40 ("A motion to amend under Rule 15(a)

may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant.").

"Whether prejudice exists depends on the nature and timing of the amendment." *Brannen v. Selene Finance LP*, 2:18-CV-602, 2019 WL 13251099, at *2 (E.D. Va. Nov. 14, 2019). An amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber,* 438 F.3d at 427 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). In contrast, an amendment is prejudicial if it "raises a new legal theory that would require the gathering and analysis of facts not already considered . . . and is offered shortly before or during trial." *Id*. (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). "Bad faith is shown by proof that the moving party's motive is to unduly delay the litigation." *Brannen*, 2019 WL 13251099, at *2 (citing *Ward Elecs. Serv. Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987)). Additionally, if the delay is unexplained, bad faith may be inferred. *Id.* (citing *Nat'l Bank of Wash, v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988)). Finally, in assessing whether a proposed amendment is futile, the Court considers whether the claim could withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming denial of motion to amend "because the proposed amendments could not withstand a motion to dismiss"); *see also Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021) ("A court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss.").

### B.  Federal Rule of Civil Procedure 16

The parties agree that granting Plaintiff's Motion would require modifying the scheduling orders to extend the close of discovery and move the date of the final pretrial conference. (*See* Dkt. No. 216 at 16; Dkt. No. 227 at 8–9.) Accordingly, Plaintiff must also demonstrate that there

is good cause under Rule 16 to modify the scheduling order at this time.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (affirming denial of motion to amend answer under "good cause" standard); *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 571 (E.D. Va. 2021); *Mvuri v. Am. Airlines, Inc.*, 2018 WL 11511776, at *1 (E.D. Va. Nov. 7, 2018) (denying amendment that would have required reopening discovery, continuing the final pretrial conference, and the possibility of additional motion practice).  "'Good cause' under Rule 16 'focuses on the timeliness of the amendment,' particularly 'the diligence of the moving party.'"  *Carlisle*, 540 F. Supp. 3d at 571 (quoting *Montgomery v. Anne Arundel Cnty*, 182 F. App'x 156, 162 (4th Cir. 2006)).

## III.    Analysis

At the outset, the undersigned notes that this case has always been about—and continues to be about—whether Defendant David Hossfeld improperly downloaded confidential and alleged trade secret information before leaving his employment with Plaintiff SageWater, and whether Defendant Hossfeld and/or his new employer Defendant Repipe Specialists used or are using Plaintiff's confidential and trade secret information to Plaintiff's detriment.  It is worth noting that Plaintiff's instant motion for leave to amend, brought at this late stage of the litigation, seeks to name *new* individuals who, up to this point, have *not* been named as defendants in this action, and assert *new* claims that, up to this point, have *not* been prosecuted by Plaintiff.  It is also worth noting that, as outlined above, Plaintiff filed the original complaint in June 2023 and has filed three additional versions since then—each time advancing new facts and theories of liability—creating a constant moving target, including while discovery was ongoing.  Plaintiff's newest request for leave to amend came just *three weeks* prior to the close of discovery (which has since closed on

June 14, 2024), necessitating revisions to the schedule in this matter, if granted.  Moreover, if granted, the proposed amendments would alter significantly the scope and character of the litigation.

Accordingly, and for the reasons explained in greater detail below, the undersigned recommends that the Court deny Plaintiff's Motion for Leave to Amend because the proposed amendments are unduly delayed without adequate justification by Plaintiff, would cause prejudice to the current and proposed Defendants, and/or are futile.  The undersigned also recommends denial on the basis that Plaintiff has failed to establish good cause to modify the scheduling order.

### A.  Claim for Breach of Contract Against Daniel Johnston

Plaintiff proposes to add a new claim for breach of contract against proposed new defendant Daniel Johnston.  The basis for the proposed claim is the Separation Agreement between Johnston and Plaintiff SageWater in connection with Plaintiff's termination of Johnston in 2022. (*See* Dkt. No. 216-1 ¶¶ 261–67.)  Generally, the confidentiality provision of the Separation Agreement forbids Johnston from using or disclosing Plaintiff's Confidential Information at any time after its effective date of September 2, 2022.  (*Id.* ¶ 266.)  The Separation Agreement broadly defines "Confidential Information" to include information involving Plaintiff's (and related entities) operations, finances, research and other aspects of Plaintiff's replacement services business "not generally known by the public."  (*Id.*)  Notably, the restrictions in the confidentiality provisions have no end date and appear intended to bind Johnston indefinitely.

Plaintiff's proposed complaint alleges that Mr. Johnston breached the Separation Agreement by communicating with Defendant Hossfeld while Hossfeld was still an employee of Plaintiff SageWater.  This was allegedly done in an effort to identify opportunities for Defendant Repipe Specialists (for whom Johnston then worked) and prepare Repipe Specialist project bids

by: using templates originally created by Plaintiff to submit bids on behalf of Defendant Repipe Specialists, sharing a purported SageWater estimating spreadsheet with third party vendors and subcontractors who intended to work with Defendant Repipe Specialists on repiping projects, and identifying "current and former" employees of Plaintiff to try to solicit those individuals to work for Defendant Repipe Specialists. (*Id.* ¶ 267.) As a result of Mr. Johnston's purported breach of the Separation Agreement, Plaintiff seeks to recover the severance payments it made to Johnston, including health-insurance premiums, lost profits, and attorneys' fees and costs. (*Id.* ¶¶ 269–70.) In response, Defendants argue the proposed amendment should be denied because the Separation Agreement between Plaintiff and Johnston is unenforceable (and the claim is thus futile), that Plaintiff unduly delayed in asserting the breach of contract claim against Johnston, and that Defendants and Mr. Johnston would be prejudiced by the amendment.

Upon review, the undersigned finds that Plaintiff has engaged in undue delay in seeking to bring a claim against Johnston that, if allowed, would prejudice both the current Defendants and Mr. Johnston at this late stage of the litigation. Specifically, to the extent Plaintiff wished to bring a breach of contract claim against Mr. Johnston related to his Separation Agreement, Plaintiff could have done so months ago. Indeed, at least as early as September 2023, when Plaintiff amended its complaint for the first time, Plaintiff was aware of many of the key facts underlying its proposed breach of contract claim against Mr. Johnston. In that First Amended Complaint (Dkt. No. 40), Plaintiff asserted, among other facts, that:

- Dan Johnston was terminated from SageWater on September 2, 2022, and is subject to several restrictive covenants, including for confidentiality, contained within his Separation Agreement with SageWater. (Dkt. No. 40 ¶ 75 & n.1.) Plaintiff's newly proposed breach of contract claim against Johnston is brought pursuant to this same Separation Agreement.

- While Hossfeld was improperly accessing, downloading and transferring SageWater's Confidential and Trade Secret Information to himself in preparation for

his Repipe Specialists employment, Hossfeld was simultaneously speaking with Dan Johnston, a former Repipe Specialists employee, who at the time of the conversations, worked for Repipe Specialists.  Between September 1 and December 31, 2022, Hossfeld and Johnston spoke by phone approximately seventy (70) times and for over nine and a half hours.[4]  (*Id.* ¶¶ 75, 76.)

- Upon information and belief, during their conversations (and while Johnston was working for Repipe Specialists), Hossfeld and Johnston were discussing "intimate details concerning SageWater's Confidential and Trade Secret Information, including current and prospective customers, projects and bids, including The Independent, in material violation of both Hossfeld and Johnston's restrictive covenants with SageWater."  (*Id.* ¶ 77.)

Further, Plaintiff or its counsel reiterated many of these same facts in subsequent proceedings and filings.  For example, in discovery motion briefs and hearings in March 2024, Plaintiff asserted:

- "[T]here are allegations that in the months leading up to Hossfeld's resignation and at the same time that Hossfeld was Airdropping and downloading SageWater's Trade Secret Information, Johnston and Hossfeld spoke on the telephone for approximately nine and a half hours, which Johnston was employed by Repipe Specialists."  (Dkt. No. 145 at 16.)

- "The fact that Johnston and Hossfeld are engaged in extensive discussions at the same time that Hossfeld is downloading SageWater's Confidential and Trade Secret Information and pursuing a move to Repipe Specialists is hardly coincidence."  (*Id.*)

- Defendant Hossfeld signed an employment agreement with Defendant Repipe Specialists while he was still working for Plaintiff, and that the employment agreement included a multifamily bonus pool with Dan Johnston and Defendant Hossfeld as the only two members of the bonus. (Dkt. No. 158 at 8)

- "Hossfeld's Repipe Specialists employment agreement makes it clear that Hossfeld's compensation is closely tied to his and Johnston's ability to sell Multi-Family repiping projects, thus, incentivizing Hossfeld and Johnston to misappropriate SageWater's Trade Secret Information in an effort to quickly monetize SageWater's leads."  (Dkt. No. 145 at 13.)

- In the six months before he left his employment with Plaintiff, Defendant Hossfeld was "actively engaged in nine and a half hours of telephone conversations" with Mr. Johnston, who was working for Defendant Repipe Specialists (*id.* at 7), and Hossfeld and Johnston were looking at Plaintiff's All Opportunities spreadsheet to "figure out

---

[4] Paragraphs 75–77 appear under the following sub-heading: "Hossfeld's Communications with Repipe Specialists Employees."

what they can take with them" in order to meet the bonus pool's purported $2 million trigger point (Dkt. No. 158 at 8, 28).

- "While Mr. Hossfeld was still employed at SageWater, he had nine and a half hours of conversations with Mr. Johnston. During that same period of time, Mr. Hossfeld was negotiating an employment agreement which created a bonus pool. That bonus pool was for multifamily sales team. As you know, its our position that Repipe Specialists was trying to short-circuit getting into the high-rise business by stealing the trade secrets dealing with Mr. Hossfeld and Mr. Johnston." (Dkt. No. 159 at 24.)

Considering these assertions, it is clear that, for months, Plaintiff has had access to, and been aware of, many of the key facts it now cites as the basis for the proposed new claim against Mr. Johnston. Accordingly, Plaintiff's contention that it could not have brought this claim sooner is contradicted by the record and unavailing. Although Defendants produced additional discovery materials to Plaintiff in early April 2024 that Plaintiff cites in support its new claim against Johnston (*see* Dkt. No. 227-1 (providing dates of production for factual assertions in Plaintiff's proposed fourth amended complaint)), the undersigned finds that this material was not essential to the claim that Plaintiff now asserts; rather, as illustrated above, Plaintiff already had in its possession information necessary to bring the claim. Further, even if the discovery produced to Plaintiff in early April *was* material to its claim, Plaintiff does not explain why it waited until *late May* 2024 to again seek leave to amend. Thus, based on the record, while Plaintiff previously had grounds to seek leave to add this claim against Johnston, it has failed to adequately explain the reason for its extreme delay. *See Brannen*, 2019 WL 13251099, at *2 (bad faith may be inferred where delay is unexplained).

To be clear, this does not mean that Plaintiff's new claims are based on the same factual circumstances previously alleged such that amendment would not pose a risk of prejudice to the opposing party. *Contra L3Harris Mar. Servs., Inc. v. BAE Sys. Norfolk Ship Repair Inc.*, No. 2:23CV259, 2024 WL 1771883, at *2 (E.D. Va. Jan. 12, 2024) (granting leave to amend complaint

to add new legal theories against same defendant including because amended complaint "relies on the same facts"). To the contrary, Plaintiff seeks to assert a *new* breach of contract claim against a *new* defendant for violating an *entirely separate* agreement than that which has been at issue in this case thus far. Allowing the amendment at this late stage in the litigation, at (and now, after) the close of discovery, would undoubtedly prejudice Mr. Johnston, who has not been a party to the litigation, has had no opportunity to influence the course of this action, would have no time under the given schedule to conduct discovery into the claims against him, and, even if the schedule was modified, would likely have only a very short time to engage in the litigation prior to trial. While the current parties have been engaged in discovery efforts for months and exchanged hundreds of discovery requests and voluminous discovery on one another, Mr. Johnston has had no opportunity to do so, and would thus suffer prejudice. Finally, the proposed amendment would also prejudice the current Defendants by raising against a new defendant "a new legal theory that would require the gathering and analysis of facts not already considered." *Laber,* 438 F.3d at 427. Accordingly, the undersigned thus recommends that the Court deny Plaintiff leave to add this claim against Mr. Johnston.

### B. Claim for Breach of Contract Against Ken O'Neill

Plaintiff's proposed new count against Ken O'Neill suffers from similar deficiencies. Plaintiff alleges that O'Neill breached his Separation Agreement with Plaintiff by forwarding a copy of the Agreement to Johnston on February 28, 2023, and by disclosing Plaintiff's confidential information "for the benefit of Repipe Specialists." (Dkt. No. 216-1 ¶ 280.) As examples of the purported disclosure of confidential information, Plaintiff claims, without explanation, that O'Neill used unidentified confidential information to "actively assist[]" Repipe Specialists' bid for two projects and to prepare a request for an advance from Repipe Specialists in August 2023.

(*Id.*)  Additionally, Plaintiff alleges that O'Neill breached his severance agreement by virtue of *Johnston* sending a copy of a SageWater spreadsheet *to O'Neill*.  (*Id.*)

As with the proposed breach of contract count against Johnston, Plaintiff has been aware of key facts underlying its proposed new claim against O'Neill for months.  For example, in connection with discovery motions filed in March 2024, SageWater stated that it was "aware" that, in August 2023, O'Neill shared a Magnolia Terrace Project spreadsheet with Johnston and had email correspondence related to that project with Jeff Butler in the same month.  (Dkt. No. 145 at 12–13.)  In that same filing, SageWater stated that O'Neill created his own contracting company after being terminated by Plaintiff and worked as a subcontractor for Repipe Specialists, including on the Magnolia Terrace Project, which is one of the projects Plaintiff alleges Defendant Repipe Specialists won using Plaintiff's confidential information.  (*Id.* at 12.)  SageWater further described the purported communications between O'Neill, Butler, and Johnston as Repipe Specialists encouraging or aiding former SageWater employee O'Neill to "violate post-employment restrictive covenants" and specifically referenced O'Neill's severance agreement—the same agreement underlying Plaintiff's proposed new count against O'Neill.  (*Id.*)  Plaintiff also identified O'Neill's work as a subcontractor to Repipe Specialists on the Magnolia Terrace Project and related communications as "further evidence of potential misappropriation" of Plaintiff's trade secrets and confidential information.  (*Id.*)

Plaintiff's contention that it did not have enough facts to assert the proposed new claim against O'Neill before May 2024 is, again, belied by the record.  Even if Plaintiff could establish that it did not have grounds to bring the claim against O'Neill before the April 2, 2024 document production referenced in its supporting memoranda, Plaintiff fails to adequately explain or justify why it waited six additional weeks before seeking leave to amend its complaint.   Under these

circumstances, allowing the amendment at this late date would cause prejudice to Mr. O'Neill, who would be drawn into this litigation as a named party a year after it was filed and be forced to investigate the claims against him, marshal information, and defend himself after the discovery phase between the parties has already closed. To the extent Plaintiff wishes to try to recover from Johnston or O'Neill for alleged breach of their separation agreements, it should pursue those claims in a separate matter.[5]

### C. Conspiracy Claims Against All Defendants

As outlined above, Plaintiff seeks to assert two conspiracy claims under Virginia law against all current and proposed defendants. Plaintiff's first count for civil conspiracy appears to be brought under Virginia common law (although the proposed fourth amended complaint does not explicitly say so). In Virginia, a common law civil conspiracy claim requires "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 321 S.E.2d 69 (Va. 1984)). To be sufficient, a common law claim of civil conspiracy also requires a showing that the underlying tort was committed. *Id.* (citing *Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007)). However, if "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Id.* (quoting *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, 50 (1995)). As the Supreme Court of Virginia has explained, "the gist of the civil action of conspiracy

---

[5] Finding that the proposed breach of contract claims against Johnston and O'Neill should be denied on the grounds that Plaintiff's undue delay would cause prejudice to the opposing party, the undersigned need not address Defendants' argument that the proposed claims are futile because the severance agreements are unenforceable. Suffice it to say that there are serious questions about the enforceability of one or both of the agreements, the resolution of which would undoubtedly expend both party and judicial resources to determine. Thus, litigation of claims brought under the severance agreements is better left for a separate action—not the pending action, which is finished with discovery and on the eve of dispositive motions and trial.

is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means." *Grisham*, 639 S.E.2d at 189.

Plaintiff's second civil conspiracy claim is for business conspiracy under Virginia Code §§ 18.2-499, 500. "A business conspiracy cause of action arises when two or more persons 'combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever.'" *GEICO v. Google, Inc*., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (quoting Va. Code §18.2-499). "[B]usiness conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" *Id.* (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prods.*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)). This "prevents every business dispute over unfair competition becoming a business conspiracy claim." *Id.* Additionally, in Virginia, "it is black letter law that a claim that a corporation has conspired with its own agent fails as a matter of law." *Cvent, Inc. v. Eventbrite, Inc*., 739 F. Supp. 2d 927, 938–39 (E.D. Va. 2010); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("Acts of corporate agents are acts of the corporation itself.") Thus, Plaintiff cannot sustain a claim that Defendant Repipe Specialists conspired with any of its employees or agents who were working within the scope of their employment. *See NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1017–18 (E.D. Va. 2018).

Upon review, the undersigned finds that Plaintiff has failed to plead either a common law civil conspiracy or statutory business conspiracy claim with the requisite particularity to make those claims viable, such that Plaintiff's proposed amendments are futile. Specifically, Plaintiff's proposed fourth amended complaint offers only vague allegations regarding the timing and

16

specifics of the alleged conspiracy and, as to any claims that would *not* be barred by the intracorporate immunity doctrine, Plaintiff has not alleged "sufficient factual matter" (beyond mere conclusions) demonstrating an agreement to engage in unlawful activity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For example, the proposed fourth amended complaint states that Repipe Specialists hired Johnston (without saying when) and alleges that "thereafter" Johnston prepared a document (again without saying when) "that advocated soliciting current and former SageWater employees, including Hossfeld, O'Neill, and others. (Dkt. No. 216-1 ¶¶ 290–91.) But even putting aside the vagueness of these allegations, the proposed amended complaint does not explain how the mere act of hiring Johnston (who had been terminated by SageWater) is unlawful or constitutes evidence of a conspiracy, or how identifying current or former employees of a competitor for possible hiring constitutes a conspiracy to do something unlawful or through unlawful means. Moreover, once Johnston became an employee of Repipe Specialists, it is a legal impossibility that any actions he took within the scope of his employment (e.g., preparing a strategy document) were in furtherance of a conspiracy under the intracorporate immunity doctrine.

The proposed amended complaint also alleges that, in or around October 2022, Johnston and Butler (who were then employees of Repipe Specialists) conspired with Hossfeld to create a multi-family division within Repipe Specialists that would compete with SageWater and that the co-conspirators "intend[ed] to, and actually us[ed], SageWater's confidential and proprietary information to kick-start and scale the new division." (*Id.* ¶ 293.) As Defendants point out, however, the fact that Repipe Specialists sought to create a new division and compete with SageWater does not make it plausible that there was concerted unlawful activity rising to the level of conspiracy, nor are there any facts specifically connecting Repipe Specialists, Johnston, or

Butler to Hossfeld's alleged improper downloads.  And while there also is an allegation that in December 2022, "Repipe Specialists and its co-conspirators developed a plan to raid SageWater, its employees, active projects, and confidential and proprietary information as a means to quickly solve its cash flow problems" (*id*. ¶ 288), because Johnston and Butler were employees of Repipe Specialists at that time, it is again a legal impossibility that they were Repipe Specialists' co-conspirators.  Indeed, perhaps that is why the proposed amended complaint does not even identify Repipe Specialists' alleged "co-conspirators" in the December 2022 timeframe.  (*Id*.)

As to O'Neill, the earliest allegation involving him is from February 2023, when Johnston allegedly sent O'Neill a copy of Plaintiff's "confidential and proprietary estimating spreadsheet" for the Magnolia Terrace project.  The proposed complaint then makes the vague allegation that O'Neill somehow used the spreadsheet to develop his work proposal for the project.  (Dkt. No. 216-1 ¶ 280.)  But the proposed complaint is devoid of any facts showing when or how O'Neill joined the alleged conspiracy.  In fact, as explained above, the proposed complaint never identifies when the purported conspiracy was formed or when each alleged member joined it, which is a fatal flaw.  With respect to O'Neill specifically, all Plaintiff can muster is an accusation that he had numerous communications with Hossfeld, Johnston, and/or Butler in February 2023 and received a copy of a bid for the Magnolia Terrace project from Johnston after the bid already had been submitted.  (*Id.* ¶ 304.)  The proposed complaint then concludes, without explanation, that communications and receipt of a submitted bid mean that "O'Neill actively participated in the conspiracy to steal the Magnolia Terrace Project from SageWater."  (*Id.*)  Left unexplained in any way is how (or if) these purported actions involving O'Neill in February 2023 relate to the allegations against Repipe Specialists, Butler, and Johnston in October 2022 and December 2022.  Accordingly, based on the allegations in the proposed amended complaint, the undersigned finds

that Plaintiff has not sufficiently pleaded a conspiracy claim under Virginia statutory or common law and the proposed conspiracy counts involving these proposed defendants are thus futile.

With respect to any alleged conspiracy between current Defendants Repipe Specialists and Hossfeld for alleged actions during the time period *before* Hossfeld was employed by Repipe Specialists, Plaintiff has had ample time to bring a conspiracy claim but failed to do so.  For example, in the Amended Complaint filed in September 2023 (Dkt. No. 40), Plaintiff alleged:

- Hossfeld and Repipe Specialists are utilizing the ill-gotten Downloads for their own benefit to unfairly compete with SageWater.  (*Id.* ¶ 9.)

- While Hossfeld was improperly accessing, downloading and transferring SageWater's Confidential and Trade Secret Information to himself in preparation for his Repipe Specialists employment, Hossfeld was simultaneously speaking with Dan Johnston, a former Repipe Specialists employee, who at the time of the conversations, worked for Repipe Specialists.  Between September 1 and December 31, 2022, Hossfeld and Johnston spoke by phone approximately seventy (70) times and for over nine and a half hours.  (*Id.* ¶¶ 75–76.)

- SageWater's business will be irreparably injured by *Defendants'* [Repipe Specialists and Hossfeld] theft of, and continued use of, SageWater's Trade Secret Information. (*Id.* ¶¶ 147, 169 (emphasis added).)

- Repipe Specialists intentionally permitted Hossfeld to use and disclose SageWater's Confidential and Trade Secret Information and to solicit The Independent project and continues to allow Hossfeld to misappropriate SageWater's Confidential and Trade Secret Information and to solicit current and prospective customers of SageWater even after receiving SageWater's cease and desist letter and Plaintiff's filing of suit against Hossfeld.  (*Id.* ¶¶ 228–29.)

Similarly, in March 2024, Plaintiff asserted:

- "It is not a coincidence that Hossfeld was negotiating his Repipe Employment Agreement and compensation structure while simultaneously downloading SageWater's entire customer database and years of bid packages and estimating spreadsheets. Rather, SageWater asserts that Hossfeld was doing so to support Repipe Specialists' 'new priorities' and create the Multi-Family Unit . . . ." (Dkt. No. 145 at 19.)

- "If Hossfeld and Johnston were communicating at times that correspond to the dates that Hossfeld was downloading SageWater's confidential and Trade Secret Information, SageWater is entitled to draw an inference that Johnston and Hossfeld

were discussing what documents Hossfeld should download in anticipation of his Repipe Specialists employment, and what projects Hossfeld should steer to Repipe Specialists." (*Id.* at 27.)

Plaintiff offers no explanation for why it did not previously amend the complaint to add conspiracy claims based on these facts, and the undersigned finds that any attempt to do so now would be unduly prejudicial to the current Defendants. *See, e.g.*, *McDaniel v. Light Shine Media Group*, 2020 WL 13607740, at *1 (E.D. Va. June 19, 2020) (recommending denial of leave to file amended complaint adding new defendant and new claims, including conspiracy, three weeks before end of discovery period). Accordingly, because granting Plaintiff leave to add the new conspiracy claims "would change the nature and scope of trial, leading to prejudice toward Defendant and indubitable delay in the matter," the undersigned recommends that the Motion be denied. *Brannen v. Selene Finance LP*, 2:18-CV-602, 2019 WL 13251099, at *4 (E.D. Va. Nov. 14, 2019).

### D.  Lack of "Good Cause" Under Rule 16

The undersigned also recommends denying Plaintiff's Motion on the basis that Plaintiff has failed to show good cause for amending the Scheduling Order in this matter, which would be necessary if any part of Plaintiff's Motion were to be granted. *See* Fed. R. Civ. P. 16(b)(4); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (affirming denial of motion to amend answer under "good cause" standard). Specifically, as outlined above, Plaintiff has not exercised the appropriate diligence in seeking leave to amend the complaint to add the proposed claims, the factual basis for which it has known for months. *See* Dkt. No. 123 (Rule 16(b) Scheduling Order at ¶ 12(c), requiring a party to move to amend "as soon as possible after counsel or the party becomes aware of the grounds for the motion"); *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 571 (E.D. Va. 2021) (considering "diligence of the moving party"). Additionally, the parties have been on notice since at least January 25, 2024, that they

should not "expect that the discovery cutoff will move or that the final pretrial [conference] date will move," including because, even at that time, the Court felt that "this case has dragged on too long." (Dkt. No. 133 at 28:9-25 (transcript of hearing).)  Thus, because granting leave to file any of the new counts set forth in the proposed fourth amended complaint would require "reopening discovery, continuing the final pretrial conference, and the possibility of additional motion practice," and because Plaintiff has not demonstrated good cause for any of those actions, the undersigned recommends that Plaintiff's Motion be denied. *Mvuri v. Am. Airlines, Inc.*, 2018 WL 11511776, at *1 (E.D. Va. Nov. 7, 2018) (denying amendment for these reasons).

## IV.   Recommendation

For the foregoing reasons, the undersigned recommends that the Court **DENY** Plaintiff's Motion for Leave to Amend the Complaint (Dkt. No. 215).

## V.   Notice

By means of the Court's electronic filing system, the parties are notified that objections to this Report and Recommendation must be filed within fourteen (14) days of its service.  Failure to timely object waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.


**ENTERED** this 20th day of June, 2024.


/s/ LRV
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia